MURDOCK and another *v.* GIFFORD and others.

Looms in a woolen factory, connected with the motive power by leathern bands, not otherwise annexed to the building than by screws holding them to the floor, which kept them steady while working, and which could be removed without injury to themselves or the building, are chattels and not a part of the realty.

So held, where a mortgage of the factory included the looms by express description, but the instrument, though recorded, was not filed as a mortgage of chattels, and the looms were seized under an execution against the mortgagor.

The rule prescribed by the statute (2 *R. S.*, 83, § 7), that, as between heir and executor, things annexed to the freehold, or to any building, for the purpose of trade or manufacture, and not fixed into the wall of a house so as to be essential to its support, shall be deemed personal property, may be regarded as the general rule for all cases and parties.

But whether a thing be a substantial part of the freehold, or a mere annexation thereto for the purpose of trade or manufacture, depends upon its relation to the inheritance; *e. g.*, machinery, like a water-wheel and gearing having a special relation and adaptation to the building, belong to the freehold, while an independent machine, like a loom, which may be removed without losing its character or value, is personalty.

APPEAL from the Supreme Court. The action was for the foreclosure of a mortgage upon certain real property known as the Owasco Woolen Factory, in the city of Auburn. The description of the property, as contained in the mortgage, is stated in the following opinion. Gifford, Sherman and Innis, who were made defendants as claiming some lien on or interest in the mortgaged premises, answered the complaint. Their answer states the recovery of a judgment by them against the mortgagors, the issuing of an execution and the levying thereof upon twenty-five broad looms, situate in the factory building upon the mortgaged premises, and constituting a part of the machinery mentioned in the mortgage. It averred that the looms are for the weaving of broadcloth, and are merely placed in one of the factory buildings, and are fastened to the floor by means of

Murdock *v.* Gifford.

ten screws in each loom, merely for the purpose of keeping said looms in their place, and in a steady position, and not otherwise, during the operation and working of them. That said looms are worked by means of a leather or gutta-percha band passing from each loom, through an aperture or opening in the floor, to the main shafting underneath said floor and looms; and that they are capable of being easily removed from their place, and the motion of any one stopped by throwing off the band, without impairing or stopping the motion of any other loom; that the looms may be easily and conveniently removed without injury to themselves or the building in which they stand. It further stated, that the mortgage set forth in the complaint was never filed or indexed as a chattel mortgage, nor was it accompanied by delivery of the property, but the mortgagor continued in the possession thereof. The defendants claimed priority over the mortgage. The plaintiffs, upon the trial, admitted the facts stated in the answer.

By stipulation between the parties, the plaintiffs had purchased the looms upon sale under the execution, and payment of the price was made contingent upon the final determination of the court. The judge decided that the looms were fixtures, part of the realty and not personal estate, and ordered judgment for the sale of the mortgaged property, and the payment of the proceeds to the plaintiffs, without deduction for the claim of the defendants under their execution. The judgment was affirmed, upon appeal, by the Supreme Court, at general term in the seventh district, and the defendants appealed to this court.

*Amasa J. Parker*, for the appellants.

*John Porter, Jr.*, for the respondents.

JOHNSON, Ch. J. The question in this case is, whether the twenty-five broad looms levied upon under the executions

of the defendants, Gifford, Sherman and Innis, were personal property; or whether, as being part of the realty, they were bound by the lien of the mortgage which the plaintiffs are seeking to foreclose. The mortgage was of "all that estate and real property, known as the Owasco Woolen Factory, situate on the Owasco outlet, in the city of Auburn, county of Cayuga and State of New York, the same being the plot of ground, buildings and water privileges lately owned by the Auburn Woolen Company, and the same being all the property recently conveyed by the trustees of said company, by deed, to Harris & Waterman; and it is intended that the whole property conveyed by said deed, and every part thereof, is included in and covered by this deed, with all the machinery and the fixtures of all kinds whatever now in the mills lately belonging to said woolen company, together with all and singular the tenements, hereditaments and appurtenances," &c. Conceding that the looms now in question were intended to pass and did pass by the terms of the mortgage, the question is, whether they passed as part of the real estate. For if they did not pass as realty, then it was necessary, as there was no actual change of possession, that the mortgage should be filed as a chattel mortgage, which was not done. The question for this purpose is, therefore, the same as would have been presented if the mortgage had described, by metes and bounds, and had conveyed, in terms, the land on which the factory was situated, without specifying the building, machinery and fixtures. For, although the intent of parties is to govern as to the subject on which a conveyance is to operate, it is beyond their power to make a conveyance operative without a compliance on their part with the rules of law in respect to the mode of conveyance appropriate to the kind of property sought to be conveyed. As they could not, by writing without seal, pass the title of land, though their written agreement termed it personalty and declared it should pass, so they cannot, by an instrument and by ceremonies appro-

priate to pass land, transfer chattels in mortgage, as against creditors of the mortgagors, without either an actual change of possession or filing the instrument as a chattel mortgage.

The question then is, were these looms realty as between mortgagor and mortgagee? Between these parties and between grantor and grantee, the effort of a court is always to ascertain the intent of the parties, and to give it effect If their language affords evidence that a chattel is intended to pass, it will pass of course, whether it be a mere chattel or one which by annexation has become part of the realty. But where no specific intention is collectable, or where the conveyance is of land by metes and bounds, and on the land a building stands in which is the thing in controversy, there it will pass or not, according as the thing is or is not, in law, part of the realty. In such a case, the only specific intention is, that the realty shall pass, and the inquiry to which a court in such a case addresses itself is, does the law regard the thing in question as pertaining to the realty? It is obvious that this question presents itself in the neatest way, completely unembarrassed by any collateral considerations, upon the death of the general owner in fee of the land. The chief distinction between the different species of property, is in the course of devolution on the general owner's death. Realty goes to the heir, personalty to the executor or other personal representative. Accordingly, the cases of heir and executor, and of vendor and vendee, in the absence of evidence of specific intention, have always been deemed identical in respect to their rights in a chattel claimed to be a part of the realty. It was so held in 21 *Hen. 7th,* 26, and it has continuously since been so held. (*Holmes* v. *Tremper,* 20 *John.,* 30; *Miller* v. *Plumb,* 6 *Cow.,* 668; *Farrar* v. *Chaufetete,* 5 *Denio,* 527.) And whenever it has become necessary to consider such a question between vendor and vendee, resort has been had for its solution to the case of heir and executor, where the same question was presented, unembarrassed by evidence of any particular intention; a

kind of evidence from which a deed from grantor to grantee would rarely be free. A statute, therefore, determining the course of devolution of property on the death of the general owner, if it is not conclusive to fix the character of property for all purposes, is at least very strong evidence in respect to its legal character. When the statute gives a particular species of property to the executor, and gives lands, tenements and hereditaments to the heir, it should be regarded at least as furnishing very clear proof, that in the legislative mind that kind of property is considered as not being in any sense included in lands, tenements or hereditaments. The Revised Statutes (2 *R. S.*, 83, § 7) declare that things annexed to the freehold, or to any building, shall not go to the executor, but shall descend with the freehold to the heirs or devisees, except such fixtures as are mentioned in the fourth subdivision of the sixth section; and that subdivision declares that "things annexed to the freehold, or to any uilding, for the purpose of trade or manufacture, and not xed into the wall of a house, so as to be essential to its support," shall be deemed assets, and shall go to the executors or administrators.

The looms in question were merely placed on one of the floors of the factory, and were fastened to the floor by means of ten screws in each loom, as the case states, " merely for the purpose of keeping the said looms in their places and in a steady position, and not otherwise, during the operation and working of the said looms." They were worked by a band carried by the fixed machinery. Any one of them could be separately disconnected with the motive power, and they could be easily and conveniently removed without injury to themselves or to the building.

In *House* v. *House* (10 *Paige*, 158), the chancellor had occasion to consider the statutory provisions which have been cited, and he observes that it was impossible, in a sentence of three lines, to define what was to be considered as part of the freehold itself, and what mere fixtures or things

Murdock *v.* Gifford.

annexed to the freehold for the purposes of trade or manu-
facture; and that it was, therefore, still necessary to resort to
the principles of the common law and to the decisions of the
courts, in order to ascertain what is a substantial part of
the freehold, and what is a thing annexed thereto for the
purpose of trade or manufacture. These observations are
certainly just; for it is quite obvious that the statute does
not mean that the executor shall take everything not essen-
tial to the support of the walls of a building, but that only
such things are spoken of as are not a constituent part of
the freehold, or of the artificial structure erected on the
land.

The case of *Lawton* v. *Salmon,* decided by Lord MANS-
FIELD, and reported in a note to *Fitzherbert* v. *Shaw* (1 *H. Bl.,*
25S), furnishes a criterion by which the character of chattels
annexed to the freehold may be determined. That was a
case of salt-pans, made of hammered iron and riveted toge-
ther, which were brought into the salt-houses in pieces and
might be removed in pieces. Davenport, for the defendant,
argued that if the salt-pans were removed, the houses would go
useless to the heir and the executor gain nothing but old iron.
Lord MANSFIELD says: "The salt-spring is a valuable inheri-
tance, but no profit arises from it unless there is a salt-work,
which consists of a building, &c., for the purpose of containing
the pans, &c., which are fixed to the ground. The inheritance
cannot be enjoyed without them. They are accessories
necessary to the enjoyment and use of the principal. The
owner erected them for the benefit of the inheritance; he
could never mean to give them to the executor, and put
him to the expense of taking them away without any
advantage to him, who could only have the old materials,
or a contribution from the heir in lieu of them." The
ground of the decision was, that the pans had a specific
relation to the inheritance. They were adapted to use in
connection with the inheritance, and, by removal, would
lose all the value which that adaptation gave them, and

become merely old iron. It was this on which the case turned. The specific form which the iron had received, fitted the pans for use with, and made them valuable in relation to, the inheritance, and not valuable as property unconnected with the inheritance.

Applying this principle to the case of a factory, the wheel or engine which furnishes the motive power, and all that part of the gearing and machinery which has special relation to the building with which it is connected, would belong to the freehold; while an independent machine like a loom, which, if removed, still remains a loom, and can be used as such wherever it is wanted and power can be applied to it, will still retain its character of personalty. With the rule as thus stated, many of the cases coincide, and those, too, which have been carefully examined. (*Powell* v. *Monson Co.*, 3 *Mason*, 459; *Gale* v. *Ward*, 14 *Mass.*, 352; *Cresson* v. *Stout*, 17 *John.*, 117; *Swift* v. *Thompson*, 9 *Conn.*, 63; *Teaff* v. *Hewitt*, 1 *McCook*, 511; *Vanderpoel* v. *Van Allen*, 10 *Barb.*, 157.) It is true that, upon this subject, all the cases cannot be reconciled, and that perhaps no rule can be laid down, in abstract terms, which will furnish a clear guide in every case. But in respect to this species of property, the rule we act upon in this case is not difficult of application, and it will, we think, generally coincide with the actual intention of persons erecting and owning such property.

ROOSEVELT, J., dissented; SELDEN, J.(who did not hear the argument), and STRONG, J., expressed no opinion; all the other judges concurring,

Judgment reversed and new trial ordered.