Grover, J.
The question whether the act passed May 27th, 1853 (ch. 283), conferring power upon the defendant to subscribe for stock in the Ogdensburgh, Clayton and Rome Rail *21 road Company is constitutional and valid, was decided by this court between these same parties against the defendant, at the last September term (18 N. Y., 33), and no question upon this ground is now made; nor upon the approval of the act by the electors of the village of Borne, pursuant to the 9th and 10th sections. The plaintiff, upon the trial, introduced in evidence the certificate of the Commissioners of the Railroad Fund of Rome, which was in all respects as required by the 11th section of the act, but gave no further evidence showing that $500,000 had been subscribed to the stock of the railroad company prior to the issuing of the bond and coupon in suit, by the commissioners. The defendant moved for a non-suit, upon the ground that there was.no proof that $500,000 had been subscribed to the stock of the said company. The motion was denied by the court, and the defendant excepted. The defendant offered proof tending to show that $500,000 of valid subscriptions had not, in fact, been made to the capital stock of the railroad, which evidence was rejected, and the defendant excepted.
By the 11th section of the act it is provided that the Commissioners of the Railroad Fund of Rome shall have no power or authority to negotiate, sell or transfer the bonds issued- under the act, except upon the express condition that $500,000 shall have been first subscribed to the capital stock of the railroad company, exclusive of the subscription thereto by the defendant; and that said commissioners, before negotiating, &e., any of said bonds, should make and subscribe a certificate, in writing, that such subscription had actually been made, and, in their judgment and belief, in good faith, and by persons of ability sufficient to pay their subscriptions in full, and that such certificate should be filed with the clerk of the board of trustees of the village of Rome. The exception of the defendant to the refusal of the judge to nonsuit the plaintiff presents the question whether the certificate of the commissioners is any competent evidence that the subscription to the capital stock of the railroad company had been made as required by the 11th section; and the excep *22 tion to the rejection of the proof offered by the defendant, the further question whether such certificate was conclusive evi- ■ dence that such subscription had been made. Upon looking ■at the various provisions of the act in question, it will be seen that the object of the Legislature was to enable the defendant to aid in the construction of the railroad specified in the act, and to protect the people from being involved in an abortive enterprise. To accomplish this, authority is given to issue the bonds of the defendant as prescribed in the act, when, among other things, $500,000, exclusive of the defendant’s ■ subscription, should have been in good faith subscribed to the capital stock of the railroad company, by persons of sufficient ability to pay their subscriptions in full. A certificate of those facts is to be made by the commissioners and filed with the clerk of the board of trustees. The commissioners are, by the 4th section of the act, made subject to the control of the board of trustees of the defendant in the performance of their duties, and responsible to them for the faithful discharge thereof. The good faith of the subscriptions and the ability of the subscribers to pay are obviously of at least equal importance to the defendant as the formal making of the subscriptions; and yet the act is entirely silent as to these particulars, except in the requisites of the certificate of the commissioners. Their certificate is the only evidence required of these facts. Why require the commissioners to certify to the amount of subscriptions at all, if no effect is to be given to the certificate, when made ? It cannot be said, if this be so, that they would be liable to the defendant for making a false certificate. The defendant would not, in that case, be liable upon the bonds, and consequently would sustain ho damage. I think if anything more than the certificate of the commissioners, as to the subscriptions, their quality or amount, had been deemed necessary by the Legislature for the protection of the village of Rome, the act would have provided for it. It was contemplated by the act that the bonds should be sold in the market. This would be impracticable if every purchaser must at his peril investigate the amount of *23 the subscriptions and ascertain whether each was valid. I think that the true construction of section 11 makes the certificate of the commissioners conclusive evidence of the amount as well as quality of the subscriptions to the stock of the railroad, as between the defendant and the holder of the bonds issued by virtue of the act. The judgment should therefore be affirmed.
Comstock, J.
It was not pretended on the argument that the subscription of the village of Rome to the stock of the railroad company, and the execution and delivery to the commissioners of the village bonds, were unauthorized acts. The scheme .of taking the stock and creating a debt of $150,000 had been duly approved by the taxpayers. The execution of the bonds was therefore authorized and perfect, and the “Commissioners of the Railroad Fund ” held them for sale and disposition according to certain further conditions prescribed in the 11th section of the statute (Laws of 1853, 596). By that section the commissioners were authorized to negotiate these bonds so as to make them operative instruments, only on condition that the sum of $500,000 should be subscribed to the stock of the railroad, exclusive of the village subscription of $150,000; and the commissioners were directed, before selling the bonds, to make a certificate under their hands declaring that such subscription had, in fact, been made in good faith by persons able to pay the sums subscribed by them. This certificate was to be filed with the clerk of the village of Rome, and it was, in fact, made ' and filed in all respects according to the law. The facts, so far stated, had been proved when the motion for a nonsuit was made, together with the additional one that the commissioners ■ delivered the bond on which the suit was brought to the railroad company in exchange for an equal amount of stock in that company. This was a mode of negotiation authorized by the statute. (§3.)
It follows that the motion for a nonsuit was properly overruled. The bonds were payable to bearer, and although *24 under the corporate seal of the village, they were negotiable instruments in such a sense as would exempt them, in the hands of a Iona fide holder, from a defence which might be available against the railroad company. (State of Illinois v. Delafield, 8 Paige, 527; S. C. on appeal, 2 Hill, 159, 177; Mechanics' Bank v. New Haven R. R. Co., 3 Kern., 625, 627; Fisher v. Morris Canal Co., 3 Am. L. Reg., 423.) If, in point of fact, the commissioners delivered the bonds to the railroad company in exchange for stock, without a performance on the part of that company of the condition precedent of procuring a subscription of $500,000 to the stock, it is quite probable that the company itself could not enforce the bonds, although the proper certificate had been filed, declaring the condition to have been performed. By the express terms of the statute, the subscription was to precede the sale of the bonds, and I do not see how the company could get a title to them unless it procured that subscription to be actually made.
But the question is very different, where the rights of a bona fide holder are concerned. The bonds, as we have seen, were executed by due authority; the only defensive allegation being that they were improperly issued and thrown upon the market by the commissioners. Admitting this allegation to be true, I think it is no defence. It is true, that every person purchasing one of these bonds in market knew, or was bound to know, what were the conditions under which they could be lawfully issued. These were prescribed in the statute. But the same statute required a certificate to be made, which was to become a public record, declaratory of the fact that all the conditions had been performed. In the case of the State of Illinois v. Delafield (supra), State bonds or stocks had been prepared and executed by the officers having due authority of law; the purpose being to sell them in order to raise funds for the construction of a canal. They were put into the hands of agents for sale, who sold and delivered them in violation of an express provision of the law which authorized their creation. It was held by the Chancellor—and, on appeal, by the Court of Errors—that the bonds would be obligatory upon *25 the State of Illinois in the hands of Iona fide holders; and on that ground, the defendant, Delafield, was restrained from selling or disposing of them. That decision rested on a principle entirely familiar in the law of negotiable paper, and of no doubtful application to the present case. If the commissioners abused or transcended their powers in the sale of the bonds in question, the statute under which they acted made them personally liable to the village of Rome (§4). But such abuse or excess of power would not affect parties purchasing the bonds in good faith, beyond the means which the statute itself provided for ascertaining the facts on which the exercise of the power depended. Those facts were to be declared in the certificate before mentioned. That being made and filed, as the law required, and the bonds being actually issued by the commissioners, they could be safely bought in the market like other negotiable instruments. It is, indeed, scarcely possible that the Legislature could have any other design in requiring such a certificate to be made.
The motion for a nonsuit having been denied, the defendant offered to prove, in substance, that, although the railroad company procured a subscription of over $500,000, the per cent thereon had not been paid in, as required by the general railroad act (Laxos of 1850, p. 211, § 4), at the time the commissioners made and filed their certificate. The evidence was rejected; and the decision was right, upon two grounds: First, the subscribers to the stock could not, as I now think, but without a particular examination of the question, repudiate their subscriptions on the ground that they had failed to pay down ten per cent; second, the certificate of the commissioners that $500,000 had been subscribed, &c., was conclusive evidence of the fact, as between the village of Rome and parties who purchased the bonds in good faith. The reasons for this conclusion have already been suggested.
The judgment should be affirmed.
Denio and Gray, Js., expressed no opinion; all the other judges concurring,
Judgment affirmed.