ALONZO B. VOORHEES, as Receiver, etc., et al., Appellants, *v.* MICHAEL McGINNIS et al., Respondents.

There are several tests which aid in determining the question whether articles, personal in their nature, have acquired the character of real estate. 1st. Actual annexation, which must be of a permanent character, except in case of those articles which are not themselves annexed, but are deemed to be of the freehold from their use and character. 2d. Adaptability to the use of the freehold. 3d. The intention of the parties at the time of making the annexation. In the case of machinery, the circumstance, that it may or may not be removed from the freehold without great injury to the building containing it or to itself, is not now deemed to be controlling.

One K., being the owner of a saw and grist-mill, for the purpose of supplying steam power to both, in 1850 erected a substantial building, adapted for the purpose, to contain the requisite machinery; he placed therein a steam-engine, boilers, shafting, gearing, etc.; the engine and boilers were placed upon and bolted to solid brick foundations resting upon the ground excavated for the purpose; the brick work being carried up and over the boilers; the shafting and gearing were constructed with especial reference to the place; were adapted to the nature and objects of their employment, and were firmly fastened and bolted to the building, but could be removed without injury to its walls. They were put up without special intent, on the part of K., either of making them part of the freehold or of removing them at a future time. K. borrowed the money to make the improvements, giving a mortgage upon the property. In 1860 the old boilers were taken out and replaced by new ones; while the new boilers were at the shop in process of construction, and a large portion of the engine there being repaired, K. gave a chattel mortgage upon them to defendant W., and after the repairs were completed and the machinery in running order, gave another upon them and the other machinery to defendant McG. After the repairs and before the last chattel mortgage he gave another real estate mortgage upon the premises; plaintiff acquired title upon foreclosure and sale under the two real estate mortgages. Defendants subsequently removed the machinery covered by their mortgages. In an action to recover possession,—*Held* (GRAY, C., dissenting), that although K. had no special intent, the facts disclosed that the boilers, engine, shafting and gearing were intended to be a permanent accession to the freehold; that the execution of the first chattel mortgage was not sufficient to overthrow this presumption and raise the contrary one, of an intent to preserve their personal character; that therefore they became and were a part of the freehold, and passed to the plaintiff upon his purchase. The remedy of the mort-

gagees is against those who wrongfully converted the personal into real property.

(Argued September 26, 1871 ; decided January term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial district, affirming a judgment in favor of defendants, entered upon the report of a referee.

The action was brought to recover possession of a steam-engine, boilers, gearing, shafting, planing machines, saw benches, turning lathe, etc., alleged to have been wrongfully severed from the freehold and removed by defendants from certain buildings in the town of Coeymans, called the Kimmey mills.

Plaintiff Callanan claimed to be the general owner, deriving title through the foreclosure of two mortgages, both executed by Philip Kimmey, covering the premises upon which said mills were situated.

Prior to 1850, Kimmey had erected upon the premises a grist-mill and a saw-mill, situate upon the opposite sides of a small stream, and propelled by water therefrom; desiring to enlarge his business and wanting more power, he concluded to erect a building for a steam-engine and the requisite machinery, shafting, gearing, etc.

He borrowed $6,000 for the purpose of J. J. Callanan, and, to secure the same, executed his bond and a mortgage upon the premises, dated April 5th, 1850; a strong and durable building was erected, well adapted for the purpose, with a stack of chimneys built into the wall, into which the flue of the boilers was fastened; said boilers and the engine and shafting and gearing and other machinery were placed in and attached to the building, in the manner stated in the opinion of HUNT, C., and with the intention of being used therein. In the winter of 1860, the old boilers having become worn out, Kimmey made an arrangement with defendant, McGinnis, to make new boilers, taking the old ones in part payment. In April, 1861, while the new boilers were being built and were in the shop of McGinnis

in Albany, where were also portions of the engine being repaired, Kimmey executed to defendant Westcott a chattel mortgage upon the boilers, engine and one planing machine, to secure $2,000. The new boilers were put into the building.

In July, 1861, Kimmey executed another real estate mortgage, covering the mill premises to plaintiff, James Callanan, for $1,452; and in October, 1861, he executed a chattel mortgage to McGinnis, to secure a balance upon his account, covering the property mentioned in Westcott's mortgage, and also the shafting, gearing and various pieces of machinery in the two mills.

The two real estate mortgages were foreclosed, and upon the sale the premises were purchased by plaintiff Callanan, who afterward commenced an action against Kimmey and others to get possession, in which action plaintiff Alonzo B. Voorhees was appointed receiver of all the property, fixtures and machinery, and as such took possession thereof. In December, 1862, the defendants, with men and teams, went to the mills, took out and carried away the property covered by their mortgages.

The referee found, as matter of law, that the articles of property covered by the chattel mortgages were not bound by the lien of the real estate mortgages as against the claims of defendants, and that the latter were entitled to the possession thereof.

*Lyman Tremain* for appellants. The engine and boilers were fixtures, and became part of the freehold. (*Snediker* v. *Waring*, 12 N. Y., 171; *Winslow* v. *M. Ins. Co.*, 4 Metc., 306; *Ford* v. *Cobb*, 20 N. Y., 344; *Richardson* v. *Copeland*, 6 Gray, 536; *Miller* v. *Plumb*, 3 Cow., 665; *Union Bank* v. *Emerson*, 15 Mass., 159; *Ives* v. *Oglesby*, 7 Watt, 106; 17 Sergt. & R., 413; 3 Watt, 140; 6 Greenl., 154; 11 N. Y., 123; *Walker* v. *Sherman*, 20 Wend., 655; *Snediker* v. *Waring*, 12 N. Y., 170; *Farmers' L. & T. Co.* v. *Hendrickson*, 25 Barb., 484; Am. Law Reg., 321;

*Potter* v. *Cromwell*, 40 N. Y., 292; *Tabor* v. *Robbins*, 36 Barb., 483.) The old rule has only been relaxed as between landlord and tenant. (6 Cow., 655.) As between mortgagor and mortgagee the same rule applies as between grantor and grantee, and erections made after the mortgage are covered by it. (*Union Bank* v. *Emerson*, 15 Mass., 159; *Winslow* v. *Ins. Co.*, 4 Metc., 306; 1 Hill on Mort., 294, note; *Snediker* v. *Waring*, 12 N. Y., 170; *Robinson* v. *Preswick*, 3 Edw., 246; *Breeze* v. *Bange*, 2 E. D. Smith, 474; *Butler* v. *Page*, 7 Metc., 40; *Gardner* v. *Grindley*, 19 Barb., 317; *Day* v. *Perkins*, 2 Sand. Ch., 359; *Shepard* v. *Philbrick*, 2 Den., 174; *Gillet* v. *Balcom*, 6 Barb., 370.) The fact that they were embraced in the chattel mortgages, without the consent of the mortgagee, does not change their character. *Leland* v. *Gasset*, 2 Wash. Dig. Vt. R., 235–6; 17 id., 403; *Preston* v. *Briggs*, 16 id., 124; *Van Ness* v. *Packard*, 2 Pet., 137; *Walmesly* v. *Milne*, 6 Jur. N. S., 125; 7 C. B., N. S., 115; 5 Am. Law Reg., 328; 4 Metc., 310.) If the corpus of the machinery is a fixture, all that belongs to it, although detached, will pass as real estate. (12 Cl. & Fin., 312; 5 Am. Law Reg., 324; 2 Kay & John., 536; *The Met. Soc.* v. *Brown*, 26 Beav., 454; 25 Penn., 271.)

*John H. Reynolds* for respondents. The rights of defendants are not affected by the fact of the receiver having possession, the question would be one of contempt merely. (*Chautauqua Co. Bank* v. *Risly*, 19 N. Y., 370, 376.) The defendants were entitled to the property under their chattel mortgages. (*Murdock* v. *Gifford*, 18 N. Y., 28; *Vanderpool* v. *Allen*, 10 Barb., 157; *Walker* v. *Sherman*, 20 Wend., 636; *Godard* v. *Gould*, 14 Barb., 662; *Swift* v. *Thompson*, 9 Conn., 63–6; *Gale* v. *Ward*, 14 Mass., 352; *Stevens* v. *R. R. Co.*, 31 Barb., 590; 3 R. S., 5th ed., 169, § 6, sub. 4; *Farrar* v. *Chanflettle*, 5 Den., 527–31.) The artificial power did not belong to the inheritance. (Cases above cited, and 5 Den., 527, 530.)

Hunt, C. The plaintiffs claim that the property in question forms a part of the realty. They are the owners of the realty by purchase, and hence insist that the articles belong to them. The title of the defendants is based upon the claim that the articles are or were to be deemed of a personal character. They are the holders and owners, under chattel mortgages, executed by the former owner, Philip Kimmey. The referee and the General Term of the third district held that the property was of a personal character, and gave judgment for the defendants.

There are several tests, in the form of general principles, that will aid in the determination of the present question.

1. The rule is quite uniform that to give to articles, personal in their nature, the character of real estate, the annexation must be of a permanent character. There are exceptions to this rule, in those articles which are not themselves annexed but are deemed to be of the freehold from their use and character, such as mill stones, fences, statuary and the like. (*Potter* v. *Cromwell*, 40 N. Y. R., 287; *Capen* v. *Peckham*, 35 Conn. R., 88.)

2. A second test, but not so certain in its character, is that of adaptability to the use of the freehold. (*Voorhis* v. *Freeman*, 2 Watts & S., 116; *Pyle* v. *Pennock*, id., 390.)

3. A third test is that of the intention of the parties at the time of making the annexation. (*Potter* v. *Cromwell*, *supra*; *Murdock* v. *Gifford*, 18 N. Y., 28; *Winslow* v. *Merchants' Ins. Co.*, 4 Metc., 306; *Swift* v. *Thompson*, 9 Conn. R., 63; *Capen* v. *Peckham*, 35 Conn. R., 88.)

The circumstance that the machinery may or may not be removed without great injury to building or to itself, is not now deemed to be controlling. In *Potter* v. *Cromwell* (*supra*) the tests are declared to be, first, actual annexation; second, the use or purpose of the application of the machinery; third, the intention to make the annexation a permanent accession to the freehold.

In Washburn on Real Property (vol. 1, p. 7), the rule is thus laid down, as between vendor and vendee, and mortgagor

and mortgagee : " If the owner of lands provides anything of a permanent nature, fitted for and actually applied to use upon the premises by annexing the same, it becomes a part of the realty, though it might be removed without injury to the premises." The cases cited in support of this proposition show, also, that the same rule applies, whether the article in question be annexed to the premises before or after making the mortgage. Upon the page following (8) he adds : " It may be stated that whether a thing which may be a fixture becomes a part of the realty by annexing it, depends, as a general proposition, upon the intention with which it is done. Between vendor and vendee, or mortgagor and mortgagee, it has been held that gas fixtures, including a gasometer and apparatus for generating gas, would pass with the house in which they were in use, but not between tenant and landlord, if put in by the tenant. Steam boilers and engines used in a marble mill, and supplying the power by which it is carried, pass as a part of the realty, by a mortgage of the estate by the owner. But the saw frames in such mill were held to be personal chattels. If a steam-engine, for instance, be placed in a shop or factory, to create the moving power by which it is carried on, the engine and shafting necessary to communicate the motive power to the machinery would be as much a part of the realty as a water-wheel, and would pass with the realty by deed or mortgage. The shelves, drawers and counter tables, fitted in a store, pass with the store as realty, * * and things which may be fixtures often become so, or otherwise, from the circumstance that they have been actually fitted for and applied to the realty."

Kent says (vol. 2, p. 343, *et seq.*) : " There are many chattels, which, though they be of a movable nature, not being necessarily attached to the freehold and contributing to its value and enjoyment, go along with it in the same path of descent or alienation. * * * The law of fixtures is in derogation of the original rule of the common law, which subjected everything affixed to the freehold to the law governing the freehold, and it has grown up into a system of judicial legis-

lation, so as almost to render the right of removal of fixtures a general rule, instead of being an exception. * * * The character of the property, whether real or personal, in respect to fixtures, is governed very much by the intention of the owner and the purposes to which the erection was to be applied." He further says : " Questions respecting the right to what are ordinarily called fixtures, or articles of personal property affixed to the freehold, principally arise between these classes of persons. 1st. Between heir and executor, and there the rule obtains with the utmost rigor in favor of the inheritance, and against the right to consider as a personal chattel anything which has been affixed to the freehold." The same rule, he declares, obtains between vendor and vendee, or between mortgagor and mortgagee.

The Revised Statutes of this State (2 R. S., 82, § 6, sub. 4) probably intended to put the executor upon the same footing with the tenant, and to give to him, in preference to the heir, such articles as a tenant might hold against his landlord. The effect of this provision is discussed by Chancellor WALWORTH in *House* v. *House* (10 Paige R., 158). It cannot, however, alter the law as to the relation of vendor and vendee, whatever may be its effect as between heir and executor. As to the former, still the law remains, as Kent declares it to be, in its utmost rigor, in favor of the inheritance.

The law upon this subject has been so recently reviewed in the Court of Appeals of this State, in the case of *Potter* v. *Cromwell (supra)*, that it would hardly be justifiable now to go over the cases in detail. It certainly is not necessary. The English cases go much further than our own in the direction of the principles already laid down. I cite a few of the more recent ones. ( *Walmsley* v. *Milne,* 7 C. B., N. S., 115; *Cullwick* v. *Swindell,* 3 Law R. Eq., 249, Dec., 1866; *Boyd* v. *Shorrock,* 5 Law R. Eq., 72; *Climie* v. *Wood,* 3 Law R. Exch., 257; 4 id., 328, on appeal.) The referee finds specially that said boilers and the steam engine were erected in a building put up for the purpose of containing and using the same or other like machinery therein, and were placed upon solid brick

foundations resting upon the ground, excavated for the purpose. The said foundations were laid in mortar and built in a permanent and substantial manner, and the engine and boilers were bolted into such foundations. That a stack of brick chimney, 100 feet high, was built as part of the building aforesaid for the use of the boilers or such other boilers as might be placed there, and was used for such boiler fires. That said boilers were of several tons weight; and the engine, with its iron bed plate, was also of several tons weight. That the brick-work of the foundation for the boilers was carried up and laid over the body of the boilers; but the bricks which covered the top of the boilers were not so laid as to be able to sustain themselves in position without the support of the boilers. The engine and boilers were, notwithstanding, capable of being removed without injury to the walls of the building, and without injury to the foundations on which they were laid, except that the removal of the boilers necessarily involved the displacement of the bricks covering the top of them. That the shafting and gearing, embraced in the schedule, was all fitted to the special use of transmitting power from the engine to the particular machines which were employed in the building, and was, in length and adjustment, adapted to the building where it was used, and was not of value, except as old material, in any other place, unless such other place, in its local arrangements, was nearly the same as the said mills. That it was all constructed with special reference to the place in which it was to be set up, and was there firmly fastened and bolted in the beams and timber of the building, but was, nevertheless, capable of being removed without injury to the walls of the building by the removal of bolts, screws and similar fastenings. That said boilers, engine, shafting and gearing were erected in as permanent and substantial a manner as is usual, and as is adapted to the nature and objects of their employment, and without any special intent, on the part of the said Kimmey, who put them up, as to making them a part of the freehold,

and without any intention as to removing them at any future time.

In relation to the engine and boilers, shafting and gearing, it would seem to be clear that they were actually and permanently annexed to the freehold, adapted to use in that position, and intended to be a permanent accession to the freehold. Kimmey, who was the owner and erected them, had no intention of removing them at any future time. That he had no special intent to make them a part of the freehold is in harmony with general experience. A man who builds a mill or a house for his own use and occupation, with everything useful and convenient for the purpose, seldom has any special intent that the creation shall be a part of the freehold, or that its auxiliaries shall constitute a part of the freehold. He builds as he wishes, having no reflection as to the legal character of the structure, thinking nothing, and generally knowing nothing, and therefore having no special intent on the subject.

It is further found that the planing machine, fire pump, saw benches and saws were worked by bands and other modes of transmitting motion from the engine, through the gearing and shafting above mentioned, and were complete in themselves as machines, as were also the copper pipes for steaming hubs, and were of equal use and value wherever they were wanted, and were affixed to the building only for convenience in using, and were capable of removal without injury to the building or to themselves.

There is greater doubt whether these articles come within the rule which would make them fixtures. They are less permanent in their character; the actual annexation is much slighter, and their use evinces less evidence of an intended accession to the freehold. They may well be held to be chattels and to pass under the chattel mortgages.

I am of the opinion that upon general principles, that is unless there be some specific agreement to the contrary, or some circumstances controlling the general rule, that the boilers and engines, shafting and gearing, became a part of

the realty, and passed to the plaintiff upon his purchase. It is said that the execution by Kimmey of a chattel mortgage upon it, before it was placed in the mill, would be sufficient to preserve its personal character. Although unknown to the plaintiff, this fact existed in the case. It comes to this: A man employs a carpenter and mason to build a brick house for him upon his lot, and pays them in full the price agreed upon. The mason puts his brick in the walls. The carpenter places his joists and timbers in the proper places in the house. The house is finished and is occupied by the owner. It then appears that the maker of the brick held a chattel mortgage upon them, executed by the mason, and that the sawyer of the timber held a chattel mortgage upon it, executed by the carpenter. Are these articles, now a part of the house, still held upon the chattel mortgages, so that the creditors can despoil the house to obtain their possession, or compel the owner to pay their value? I take it they are not. Their character as personal property is ended. They have become a part of the house; they are real estate; will pass under a deed of the land; may be subjected by a mortgage of the land, or may be held by the owner of the house. (*Fryatt* v. *Sullivan Co.*, 5 Hill., 116; *Pierce* v. *Goddard*, 22 Pick. R., 559; 1 Wash Real Prop., pp. 5, 6.) "The remedy of the party is against those who wrongfully converted the personal into real property." (BRONSON, J., in *Fryatt* v. *Sullivan Co.*) The remark of DANIELS, J., in *Potter* v. *Cromwell*, that this fact would alter the character of the property, was not well advised, and cannot be sustained upon authority.

Judgment should be reversed and new trial ordered, costs to abide the event.

GRAY, C., (dissenting). The law of fixtures has undergone many modifications; everything annexed to the freehold was at one time governed by the law of the freehold; but as Kent, in his Commentaries, has it, the law has undergone a system of judicial legislation so as almost to render the right of removal of fixtures a general rule instead of an exception.

(2 Kent, 11th ed., 420.) The rule was most liberal when applied between tenant and landlord (1 Washburne on Real Property, 18.) It was and remained, with all the modifications claimed for it, especially harsh in its application to the owner of personal property converted by a wrong-doer, and so brought into realty as to become a part of it, by changing its nature from personal to real, and leaving the owner no redress except against the wrong-doer (who may be a pauper) for its conversion. (Gibbons on Fixtures 13 Law. Lib., 13, 2, p. 4.) It was then in the light of the law, as established by what Kent termed a system of judicial legislation, declared by an act of our legislature that "things annexed to the freehold or to any building *for the purpose of trade and manufacture,* and not fixed into the wall of the house so as to be essential to its support, should be deemed assets and go to the executor." (3 R. S., 5th ed., 169, § 6, sub. 4.) Prior to this enactment, the law, in regard to fixtures, as between heir and executor and mortgagor and mortgagee, or vendor and vendee, was regarded as identical. This act, as was observed in *Murdoch* v. *Gifford* (18 N. Y., 28–32), "should be regarded as furnishing very clear proofs that in the legislative mind that kind of property is considered as not being in any sense included in lands, tenements and hereditaments;" and, as the reporter has it, "may be regarded as a general rule for all cases and parties." If this act had been interpreted to mean what its language obviously imports, this controversy as well as others which have preceeded it would probably not have arisen ; but it has not, and the result is that decisions have been made so at variance with each other as to be quite irreconcilable. In *House* v. *House* (10 Paige, 158, 163), which was a case between heir and executor, the chancellor, who manifestly did not concur in what the legislature deemed the part of wisdom in the passage of the act referred to, said it was "impossible to define, in a short sentence of three lines, what was to be a part of the freehold itself, and what were mere fixtures or things annexed to the freehold for the purpose of trade or manufacture;" and,

therefore, held it to be his duty to go back to the common law to ascertain what was a substantial part of the freehold, and what a mere fixture annexed to the freehold, and what is considered a part of a building, and what, in its nature, is mere personal property, and only annexed to such building temporarily for the purpose of trade or manufacture. There is scarcely to be found a rule more perspicuous in its language and less difficult in its application than that prescribed in the act. There certainly can be no difficulty in determining whether things annexed to the freehold or to any building are or are not for the purpose of trade or manufacture; no legal interpretation was ever given to the language employed at variance with its ordinary import; and what less simple rule for determining whether the character of the things annexed for that purpose are changed from personal to real, than by ascertaining whether they are so fixed into the wall of a house as to be necessary for its support. It may not be the best rule, but it is difficult if not impossible to frame one more lucid and easy of application. In *Fryatt* v. *The Sullivan Company* (5 Hill, 116, 117), the property wrongfully converted was so firmly affixed to the freehold that it could not be removed without destroying the building in which it was placed; and it was held that no action could be maintained for the property against the owners of the building, who were innocent purchasers under a mortgage upon the freehold. In *Murdock* v. *Gifford* (18 N. Y., 28, 32), the learned judge who delivered the opinion of the court regarded the observations of the chancellor, in *House* v. *House*, as just, and remarked that it was quite obvious that the statute did not mean that the executor should take everything not essential to the support of the walls of a building. This remark may be just, when limited to the walls only. The statute is not thus restricted in its expression; the exception is not limited to things so fixed into the walls of a house as to be essential to the support of the mere walls, but to the support of the house itself. In a subsequent case (*Ford* v. *Cobb*, 20 N. Y., 344, 348, 349), the observations of the

learned judge who delivered the opinion in *Murdock* v. *Gifford*, as well as those of the chancellor in *House* v. *House*, were the subject of comment. Those of the former were held not to be necessary to the decision of the case in which they were made, and those of the chancellor were not regarded as satisfactory; but, inasmuch as the judgment in the case of *House* v. *House* had become a rule of property, and the case of *Ford* v. *Cobb*, then under consideration, could be satisfactorily disposed of upon other grounds, the rule held by the chancellor should not then, or without great consideration, be disturbed. In a still later case (*Potter* v. *Cromwell*, 40 N. Y., 287, 291, 292), which was an action between the purchaser of real estate, upon which was a frame building containing a portable grist-mill, and a receiver appointed at the instance of a judgment creditor, for the recovery of the value of the mill, it was, as I understand the case, found as a fact that the mill was taken out of the building by taking the mill apart, and without injuring it or the building. It was further found that when the judgment debtor put the mill in the building he fastened it firmly and securely to it, and designed it as a permanent structure for use as a custom mill, and to make it a permanent accession to the freehold. In this case the statute was not referred to. The case of *House* v. *House* was cited as authority, and the court held that, notwithstanding the mill was not fixed into the wall of the house so as to be essential to its support (for it was moved without injury to either), yet, because it was designed as a permanent structure and as an accession to the freehold, it became thereby a part of it; and thus the rule stated by the chancellor in *House* v. *House* has not only been acquiesced in, but after the lapse of more than a quarter of a century has been reasserted and established as a rule upon property, and ought not therefore to be now disturbed. The referee has found, as facts in the case, that the property in question was annexed to the freehold or building for the purpose of trade and manufacture, and not so fixed into the wall of any building or house as to be essential to its support, and that it

was capable of being removed without injury to the walls of the building; when this can be done there is another mode of determining whether its character has been changed from personal to real; and that is by ascertaining the intention with which the owner annexed it. (*Hill* v. *Sewald*, 53 Pa., 271, 274, 275; *Capen* v. *Peckam*, 35 Conn., 88, 94; *Crippen* v. *Morrison*, 13 Michigan, 35; *Teaff* v. *Hewitt*, 1 McCook, Ohio Rep., 511, 529, 530.) And in Vermont, in order to change property from personal to real by annexing it to the freehold, the intention to do so must be affirmatively established. (*Hill* v. *Wentworth* 28 Vt., 248.) In *Potter* v. *Cromwell* (40 N. Y., 287), that fact was held to have been established within the stringent rule mentioned in Vermont (id., 297.) A portion of the property in controversy, viz., one planing machine, the steam-engine and fixtures, were, before they became in any manner attached to the realty, incumbered by the chattel mortgage to Westcott, and thus, within the rule in *Ford* v. *Cobb* (20 N. Y., 344), their character as personal property was preserved. The removal of the boilers required the displacement of the brick that covered them, as did the removal of the kettles, in *Ford* v. *Cobb*, involve the displacement of certain bricks of which the arch was composed; but inasmuch as it did not require any serious damage to the freehold to which they were attached, the attachment did not destroy the lien of the mortgage that incumbered them before the attachment was made. The other planing machine, as well as. the saw benches and saws, were, like the looms in *Murdock* v. *Gifford*, complete in themselves, as were also the copper pipes for steaming hubs were of equal value whenever wanted, and affixed to the building only for the convenience in using, and capable of removal without injury to themselves, and hence, within case of *Murdock* v. *Gifford* (18 N. Y., 28), were personal. I do not concur in the suggestion of the learned judge in *Potter* v. *Cromwell* (40 N. Y., 283, 296), that annexation will constitute the article annexed to be a part of the realty where no different intention or purpose is manifested.

It was not necessary to the decision of the case, the affirmative fact having been found that a permanent accession to the freehold was intended. (Id., 291, 292 and 297.) The better rule is the Vermont rule (*Hill* v. *Wentworth, supra*), requiring the intention to render the article a fixture, by the act of annexation, to be made affirmatively to appear; it will do something toward the accomplishment of what the statute intended, and be more just to creditors and those whose personal property has been or may be wrongfully annexed. In this case the referee has found, as a fact, that the boilers, engine, shafting and gearing were annexed without an intent of either making them a part of the freehold or any intention of removing them. The fact that they were annexed for the purpose of trade and manufacture, and were capable of being removed without injury to the building containing them, ought not to constitute the article annexed a part of the freehold, in the absence of a finding that an accession to the freehold was intended.

The judgment should be affirmed.

For reversal, LOTT, Ch. C., HUNT and EARL, CC. For affirmance, GRAY and LEONARD, CC.

Judgment reversed.