JAMES KINSEY AND STEPHEN KINSEY, APPELLANTS, *v.*
LUCIEN R. BAILEY, RESPONDENT.

*Fixtures — machinery in mill — chattel mortgage thereon.*

This action was brought to recover for the conversion of a boiler and certain
wheels, placed in a steam saw-mill in such a manner, as that ordinarily they
would become part of the realty. At the time of placing the articles in the
mill the owner thereof gave to the plaintiff chattel mortgages thereon, to secure
the payment of money advanced by the plaintiff to enable him to purchase
them, and at the same time stated that they should remain personal property.
*Held,* that the articles remained personal property, and that plaintiff was
entitled to the same, as against a subsequent purchaser of the mill upon a sale
had under a judgment, recovered prior to the giving of the mortgages.
*Vorhees* v. *McGinnis* (48 N. Y., 278) distinguished.

APPEAL from a judgment in favor of the defendant, entered upon
the report of a referee.

This was an action of trover, brought for the conversion of cer-
tain personal property consisting of a boiler, machinery, brick, etc.,
put into the mill of one Converse, of which property the plaintiffs
claimed to be the owners, and which defendant converted to his
own use.

On the trial before the referee to whom the issues in said cause
were referred for trial, judgment was ordered for the defendant with
costs, and from it the plaintiff appeals.

Abner L. Converse was owner of a lot of land situate in the town
of Darien, in the county of Genesee, on which had been erected a
saw-mill propelled by water. It burned down, and Converse
erected another in its place.

On the 4th of August, 1870, Converse and wife made and
delivered to Isaac E. Smith a mortgage on said land, to secure the
payment of $1,300. This mortgage was foreclosed and premises
sold, and bid in by the defendant on the 25th of January, 1873.
On the 1st of June, 1871, a judgment was recovered against said
Converse by the First National bank of Batavia, for $165.19, and
it become a lien on said saw-mill premises, and they were sold upon
a *fi. fa.* issued on said judgment, and were purchased by defend-
ant and were conveyed to him by the sheriff January 14, 1873.

On the 15th of August, 1872, Converse gave to the plaintiffs a

chattel mortgage on part of the property described in the complaint in this action, to secure the payment of $300 at the time and in the manner mentioned in said mortgage ; this mortgage was filed in the clerk's office of the town of Darien on the 2d of October, 1872. On the 19th of September, 1872, said Converse executed and delivered to the plaintiffs a chattel mortgage on other articles of personal property, the value of which the plaintiffs seek to recover for in this action ; this mortgage was given to secure the payment of $2,000. The articles mentioned in the chattel mortgages were placed in the mill between July and November, 1872.

These moneys were advanced by the plaintiffs to Converse, for the purpose of enabling him to put into his mill steam apparatus by which to operate said mill. . The work of putting in was completed in.October of that year. An engine, boiler, fly and band-wheel, and heater, together with a locomotive boiler, was procured from Messrs. Drullard & Hayes, of Buffalo, under a contract by which the latter agreed to rent said boiler, etc., to Converse, for the term of eighteen months, for $800, and if that sum should be paid, Converse might at his election become owner thereof; the title to said property to remain in said D. & H. until said sum of $800 was paid. After the commencement of this action defendant paid to Messrs. Drullard & Hayes the balance of the $800 then unpaid.

The engine and its appendages were put into a small building adjoining the saw-mill, and connected with the machinery in the mill by shafts and belts ; the boiler was placed upon a solid foundation and inclosed in a brick arch, made from the brick covered by the chattel mortgage of the 15th of August, 1872. The property was such as was proper and necessary to be used in a steam saw-mill, and was attached to the land as permanently as such machinery is ordinarily attached. The machinery might, however, be removed without injury to the building.

The referee found the facts above stated, and as conclusions of law, held that the property sought to be recovered for in this action was a part of the real estate, and that plaintiffs could not recover.

The plaintiffs' counsel requested the referee to find, amongst other things, that it was the intention of the plaintiffs to secure the debts

mentioned in the chattel mortgage by taking and retaining a lien on the property described therein, and that it was also the intention of Converse to secure and continue to the plaintiffs such lien for the payment of such debts. He was also requested to find that the property bought of Drullard & Hayes continued personal property as between those parties, until defendant purchased them of D. & H. He was also requested to find that it was the intention of Converse, that the property described in the chattel mortgages should remain personal property, for the purpose of paying plaintiffs' demands.

The referee refused to find as requested, and the plaintiffs' counsel excepted.

*Thomas Corlett*, for the appellants.

*M. H. Peck*, for the respondent.

MULLIN, P. J. :

In *Tifft* v. *Horton* (53 N. Y., 377), it is said, in accordance with a long series of adjudged cases, that chattels may be annexed to real estate, and still retain their character as personal property, and that the intention, with which they are annexed, is one of the circumstances by which to determine their character.

In the case cited there was a written contract between Mrs. Brown, who owned the elevator in Buffalo, and the plaintiffs, by which the latter agreed to manufacture an engine and boiler, and other machinery and to put them up in said elevator, all of which was to be paid for by two notes made by Mrs. B., to be secured by a mortgage on the machinery, to be given as soon as it was completed and ready to be put up. The mortgage was given while the boiler, etc., were still in the shop. It was provided in the mortgage that the engine, etc., should be and remain personal property until the notes were paid, notwithstanding the manner in which they should be put up in the elevator. There was a recital in the mortgage that the engine, etc., were made to be put up in the elevator, and in case of breach, it authorized the mortgagee to enter and take it away.

A note become due, and not being paid, the plaintiffs demanded the property of the defendants, who were in possession, but they refused to deliver it.

The engine, etc., were not put into the elevator building, but

into a small building adjoining, called the engine-house which was erected over them after they were set up.

The defendants claim to own the property as purchasers, under three mortgages which were liens on the elevator premises.

There was in the case a clear manifestation of an intention on the part of Mrs. Brown and the plaintiffs, that the engine, etc., should not become part of the realty, although it might be permanently affixed thereto. And this exemption was held to be valid against the mortgagee in the three mortgages under which defendants derived their title.

In this case it was in proof, by the son of one of the plaintiffs, that when Converse applied to them for money to aid him in putting steam power into his mill, his father, one of the plaintiffs, declined to do any thing about it until he could take counsel, and see if the machinery, etc., to be purchased, would remain personal property. Converse said the property in chattel mortgages would remain personal property. This was before any mortgages were executed. On cross-examination the witness testified that his father said he knew if the property was attached to the mill, it might pass as real estate. Converse claimed to know that it would remain personal.

It would seem then, that the advance was made specifically for the purchase of machinery to be put into the mill, and under the assurance of the owner of the mill that the property so purchased should remain personal after its annexation to the building.

This is surely some evidence of the intention of the parties to that arrangement, that the machinery should remain personal property, although it might be annexed to the mill.

To this is to be added the evidence to be derived from the two chattel mortgages.

If putting the machinery into the mill, as such machinery is usually annexed to the building in which it is to be used, rendered it real estate, the mortgages were a mere nullity, except so far as they might contain covenants or promises to pay the amounts mentioned therein. Such a result was not contemplated or intended by either party. These mortgages were, I respectfully submit, a clear manifestation and declaration of an intention to make the machinery, etc., personal property, after it was annexed to the building.

The intention was not as strongly expressed as in the case of *Tifft* v. *Horton*, but it was done in part by an instrument of the same character and of the same legal force and effect.

The contract expressed the intention more emphatically, but with no more legal force or effect than is done by the chattel mortgages.

It was said in *Voorhees* v. *McGinnis* (48 N. Y., 278), that giving a mortgage on chattels which are subsequently annexed to the realty, the chattels become a part of it, and cannot be taken by the mortgagee by virtue of the mortgage.

The case of *Tifft* v. *Horton*, if it does not overrule this proposition, so far qualifies it that there is practically nothing left of it.

If the intention of the parties to the agreement that personal property shall retain its character as such, notwithstanding it is annexed to the realty, is to determine its character, it cannot be material how that intention is manifested, so that it is clearly established. It may as well be done in a chattel mortgage, or in conversation, as in any other way.

Although, as between those parties the question is not material whether the engine, etc., bought of Drullard & Hayes, was or was not personal property after they were affixed to the mill, yet this property clearly remained personal within the case of *Tifft* v. *Horton*, and it being personal it is a circumstance to show that it was Converse's intention, to consent that all the personal property obtained on credit should retain its character of personal after it was affixed to the building.

I am, therefore, of the opinion that the referee erred in refusing to find the facts as requested by the plaintiff's counsel, and that he erred in holding that the property described in the complaint became part of the realty after it was annexed to the same, and hence the plaintiffs' complaint was erroneously dismissed.

The judgment is reversed and a new trial ordered before another referee, costs to abide event.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Ordered accordingly.