## LEONARD v. CLOUGH et al.

*(Supreme Court, General Term, Fifth Department. April, 1891.)*

FIXTURES—RIGHT TO REMOVE BUILDINGS.

   Defendants conveyed land on which there was a frame barn so built that it could be removed without injury to the soil. There was no reservation of the barn in the deed, but it was shown by parol evidence that, after the conveyance, the grantee told defendants it was theirs, and that they took and retained possession of it, and that plaintiff and all mesne grantees of the land had notice of their claim. *Held*, that the barn remained personal property, and defendants had the right to remove it as against plaintiff. DWIGHT, P. J., dissenting.

Motion for a new trial on case and exceptions ordered to be heard at the general term in the first instance, in a cause tried in Cayuga county.

Argued before DWIGHT, P. J., and MACOMBER and CORLETT, JJ.

*Amasa J. Parker*, for plaintiff.   *Payne & O'Brien*, for defendants.

CORLETT, J. The defendants were the owners of a lot of land situated in the city of Auburn, about 4 rods in width, upon which there stood a frame barn 16 feet in width, and 24 feet in length. It was a small structure built upon stones sunk in the ground. It was not attached to the stones or the ground, and the evidence tended to show that it was so built that it could be removed without injuring the soil or disturbing the foundations upon which it rested. Soon after Mrs. Robie Clough became the owner of this land she deeded to her daughter, Mrs. Gilbert, a portion of the lot, which conveyance included two-thirds of the barn. The grantor, Mrs. Clough, testified that at the time of the execution of the deed to her daughter, and after its delivery, the grantee stated: "Now, pa and ma, the barn is yours; there can be nobody interfere." The grantee, Mrs. Gilbert, on this subject testified that on the same occasion she received the deed, she told her father and mother that the barn was theirs. After that the grantors occupied the barn, and each grantee from Mrs. Gilbert had notice before they took a conveyance that the barn belonged to the defendants. In the case of the plaintiff, the evidence as to whether he received such notice was conflicting, but the jury found in favor of the defendants' contention. It does not distinctly appear, nor is the point material, whether the original grantors and the grantee had an understanding or agreement, before the execution and delivery of the warranty deed, that the barn should remain the property of the grantors; but it does appear that immediately after its execution and delivery, and on the same occasion, the grantee stated to the grantors that the barn was theirs, which would naturally imply that there was either an express or implied understanding before the execution of the deed that such should be the case. The plaintiff's contention is that the barn was a part of the real estate, and that it passed by the deed. This undoubtedly would be so, in the absence of facts showing a different understanding or agreement. In *Ford* v. *Cobb*, 20 N. Y., on page 348, the court say: "It will readily be conceded that the ordinary distinction between real estate and chattels exists in the nature of the subject, and cannot, in general, be changed by the convention of the parties. Thus it would not be competent for parties to create a personal chattel interest in a part of the separate bricks, beams, or other materials of which the walls of a house were composed. * * * But it is otherwise with things which, being originally personal in their nature, are attached to the realty in such a manner that they may be detached without being destroyed or materially injured, and without the destruction of, or material injury to, the things real with which they are connected; though their connection with the land or other real estate is such that, in the absence of an agreement or of any special relation between the parties in interest, they would be a part of the real estate." On page 349 the court say: "If the subject which would otherwise be real estate can be made personal by the creation of special relations between the parties, it is clear that the same parties may effect the same thing by express agreement." In *Tyson* v. *Post*, 108 N. Y. 217–221, 15 N. E. Rep. 316, the court say: "There can be little doubt, however, that the machinery, shafting, rollers, and other articles became, as between vendor and vendee, and mortgagor and mortgagee, fixtures, and a part of the realty." Citing *McRea* v. *Bank*, 66 N. Y. 489. "But as by agreement, for the purpose of protecting the rights of vendors of personalty, or of creditors, chattels may retain their character as chattels, notwithstanding their annexation to the land in such a way as, in the absence of an agreement, would constitute them fixtures, [citing *Ford* v. *Cobb, supra*, and *Sisson* v. *Hibbard*, 75 N. Y. 542,] so, also, it

would seem to follow that, by convention, the owner of land may reimpress the character of personalty on chattels which, by annexation to the land, have become fixtures according to the ordinary rule of law: provided, only, that they have not been so incorporated as to lose their indentity, and the reconversion does not interfere with the rights of creditors or third persons." The materials out of which this barn was constructed were originally personal property, and the barn erected in the form it was might remain such if originally so intended. *Voorhees* v. *McGinnis,* 48 N. Y. 278, and the cases above cited; *Kinsey* v. *Bailey,* 9 Hun, 452. In *Batterman* v. *Albright,* 122 N. Y. 484–490, 25 N. E. Rep. 856, the court say: "And, if the right of the plaintiff in the present case had been acquired to the trees prior to the mortgage, a different question would have been presented. In that event, the sale upon the execution and purchase by the plaintiff may have, so far as essential, been treated as a severance of the growing trees from the realty." In the case at bar it could never have been intended by the grantor or grantee that the barn should be occupied in common. A joint ownership would be useless to either party. Confusion might have been avoided by a reservation in the deed. But it was competent for the parties to treat the barn as personal property. It was so regarded between the original grantor and grantee. The defendants occupied and exercised dominion over the barn after their deed. The plaintiff, as the jury found, had notice that the barn after the deed was personal property, with the right on the part of the original grantors to remove it. Every subsequent grantee, including the plaintiff, had notice of that fact. The plaintiff's right was acquired after the agreement or arrangement to treat the barn as personal property, and he, therefore, occupies the position stated in the quotation from 122 N. Y., and 25 N. E. Rep. This barn, in view of its mode of construction, was in its own nature capable of being treated as personal property, and was not, within the exception stated in the 20 N. Y., incapable of being retained or changed into personal property. The judge in the *Tyson Case,* above cited, states, in substance, that, although the barn was real estate, it could by agreement be reimpressed with the character of personal property. Such was the arrangement and intention in the case at bar, of which the plaintiff had full notice before he took his deed. The submission of the case to the jury by the trial justice was correct, and their findings, under the instructions given, correct. Alleged errors in the admission or rejection of evidence are entirely immaterial, as the questions involved in them would only become important in case the plaintiff was entitled to recover. The same is true as to the time of removal; it was entirely immaterial whether it was removed by night or day. The motion for a new trial should be denied.

MACOMBER, J., concurs.

DWIGHT, P. J., (*dissenting.*) The action was for damage to the freehold by the removal from the plaintiff's lot of a portion of a small barn which stood thereon. In March, 1884, the defendant Mrs. Robie Clough became the owner, by warranty deed, of a lot of land four rods wide, situate on the east side of Morris street, in the city of Auburn, on which stood the barn in question adjacent to the north line of the lot. The deed was recorded soon after it was delivered. In April of the same year Mrs. Clough conveyed, by warranty deed, to her daughter, Mrs. Gilbert, the same premises, excepting and reserving therefrom a strip of land six feet wide along the north line of the lot, Mrs. Clough being then and now the owner and occupant of the lot next north of the strip reserved. The reservation included about one-third of the barn. The deed to Mrs. Gilbert was recorded within a few days after its date. In November, 1888, the plaintiff became the owner, by several mesne conveyances, of the premises so conveyed to Mrs. Gilbert. No one of

such conveyances contained any reservation or exception; all contained cov-
enants of warranty, and were duly recorded. On the trial of this action
evidence was received, under objection and exception by the plaintiff, to show
that, after the execution and delivery of the deed to Mrs. Gilbert, she at-
tempted to make an oral gift of the barn to her father and mother, declaring
to them "that now the barn was theirs; that nobody could interfere with
them in their right; that they had full permission to have it as theirs."
Evidence was also received, under similar objection and exception, to show
that the subsequent grantees of the lot, including the plaintiff, were informed
at the time of their several purchases that no part of the barn went with
the lot, but that the whole of it belonged to the Cloughs. This evidence, so
far as it related to the plaintiff, was contradicted. In April, 1889, the de-
fendants, without the knowledge or consent of the plaintiff, removed the
barn wholly onto the lot of Mrs. Clough, and the plaintiff brought this action
to recover the diminution in value of his lot by reason of such removal.
The questions arising on this motion for a new trial are presented by the
plaintiff's exceptions to the admission of evidence on the part of the defend-
ants for the purpose of establishing an oral transfer of the barn to them-
selves, and an oral reservation of the same at the time of the sale to subse-
quent purchasers, including the plaintiff, as well as by his exceptions to the
charge of the court to the effect that it was competent for the parties to the
several deeds to fix the character of the barn as personal property, and to
transfer or reserve it by word of mouth. I think the exceptions were well
taken, and are fatal to the verdict. The case is not one in which personal
property was annexed to the freehold, and in which the intention of the par-
ties at the time of making the annexation is a test of the character of the
property after that time. Such were the cases of *Voorhees* v. *McGinnis*, 48 N.
Y. 278, and *Tifft* v. *Horton*, 53 N. Y. 377. In this case the barn was never
personal property, but part of the freehold from the beginning. It was not
built by a tenant for the purposes of his tenancy, with the agreement that it
might be removed at the end of the term, but by the owner of the soil, as
an addition to the usefulness and value of the lot; and it was from the mo-
ment of its erection as much a part of the freehold as the soil itself. The
same answer must be made to the contention that the case was, within the
doctrine of *Tyson* v. *Post*, 108 N. Y. 217, 15 N. E. Rep. 316, one in which
the character of personalty might be reimpressed upon the property by parol
agreement, after it had been once annexed to the freehold as fixtures, the
answer, namely, that this building had never possessed the character of per-
sonalty, but was always a part of the realty, and could never cease to be so
until actually severed from the freehold. The case of *Mott* v. *Palmer*, 1 N.
Y. 564, which is cited by the defendants on this branch of the case, seems
not to support their contention. That was an action on a covenant of seisin,
and related to a quantity of rails which had been placed on the land by a ten-
ant, and erected into a fence by him, under an agreement that he might re-
move them at the end of his term. The action was sustained by the court of
appeals, which, of course, could have been the result only on the theory that
the fence was, as between the grantor and grantee, a part of the freehold, and
thus embraced in the covenant of seisin; and such it was held to be, although
as between the owner of the soil and the tenant it was personal property,
and belonged to the latter. In the present case there can be no question but
that the portion of the barn which stood on the lot conveyed by Mrs. Clough
to Mrs. Gilbert was, at the time of such conveyance, a part of the realty,
and, as such, passed to the grantee in the deed, both as between themselves
and as to all the world. The defendants concede so much when they plant
their defense upon the theory of a gift and transfer of that portion of the
property from Mrs. Gilbert to her parents. So that, really, the only ques-
tion is, could such a transfer be effectuated by an oral agreement? Certainly

not, unless there is something to deprive the statute of frauds of application to this case, which declares that "no estate or interest in lands  *  *  * shall hereafter be created, granted, assigned, surrendered, or declared, unless by a deed or conveyance in writing." The term "lands" in the statute is employed, in its widest sense, to embrace everything that belongs to the soil, and forms a part of the freehold. Undoubtedly it is competent for the owner of the lands to agree orally to sell or give away a building to be removed from the premises, and so give title to the building when once it should be removed; but it will not be contended that the purchaser could enforce specific performance of such a contract. I know of nothing in this case to take it out of the statute of frauds, and am of the opinion that the rulings of the court, admitting evidence of the attempted oral gift of the barn, and the charge of the court relating to the effect of such evidence, were error for which the motion for a new trial should be granted.