WESTCHESTER COUNTY.—HON. OWEN T. COFFIN, SURROGATE.
May, 1878.

## LOCKWOOD *v.* LOCKWOOD.

*In the matter of the estate of* CHARLES A. LOCKWOOD
*deceased.*

To procure an order directing an advance to be made by executors to a beneficiary under a will, as provided for in §§ 82, 83, 2 *R. S.*, 98, the petitioner must present facts going to show that such advance is necessary to the petitioner's support, in the station in life in which the petitioner occupies, and the petition should state the amount required.

Where the will after the specific bequests and devises disposed of all the residue of the estate, *Held,* that the computation of the "one-third more of assets" after payment of all debts, legacies and claims, necessary under the statute to justify such advance, was to be made by excluding the residuary legacies.

Where the beneficiary applying for the advance, is to receive, under the will, the interest only of a specified sum, which is bequeathed in trust for his benefit, with remainder over, only an advance of such interest as has accrued is proper.

A sum to be paid annually cannot be ordered as an advance, but only a specific amount to meet present needs.

Mirrors secured to the wall by an iron clamp at the top, and let into and glued to the mantel-piece, and constructed at the same time and with frames of the same wood as the mantel, *Held* to be fixtures.

AN application was presented in this matter by Adelia M. Lockwood, widow of the deceased, on behalf of herself, and of Adelaide L. Lockwood, her step-daughter, a minor, of the age of about seventeen years, of whose person she is testamentary guardian, for an order directing the executors to advance to her, as a legatee under the will of the deceased, for her own support and the support of said minor, also a legatee, a portion of their respective legacies.

The petition set forth that the testator died Nov. 28, 1877; that the assets of the estate, as shown by the

inventory, amounted to $170,000, consisting mainly of cash, United States bonds, and bonds and mortgages, and that the debts did not exceed $1,000; that the petitioner and said minor were each entitled, by the terms of the will and codicils, to the income from $25,000, annually, and also to the one-half of the income from the residuary estate; that various legacies to other persons aggregated $62,800; that, after deducting these legacies and the amount of the debts, there would remain to the petitioner and said minor, a sum of at least $50,000, to the income of which each was entitled to one-half; that the executors had refused to make any allowance to her for her own support, or to meet the expenses incurred on account of the minor; that her income from other sources was wholly insufficient for her support, and that she was greatly embarrassed and distressed by reason of said refusal.

It alleged, and it was admitted, that the appraisers, in taking the inventory, neglected to set apart for the widow, the usual articles and property, as provided by law.

The affidavit on behalf of the executors, in answer to the petition, among other things, alleged that the petitioner had a "considerable income" from the estate of a former husband, and gave other facts relied upon as tending to show that the order asked for was unnecessary. It also contained allegations to the effect that the minor also had "considerable income" from other sources.

Other facts appear in the opinion.

ARNOUX, RITCH & WOODFORD, *for the petitioner.*

D. G. CROSBY, *for the executors.*

THE SURROGATE.—This is an application, made under §§ 82, 83, 2 *R. S.*, 98, for an order directing the executors to advance parts of legacies. The allowance can be directed to be made only where it shall be alleged, and adjudged by the court, to be necessary for support. It is insisted by counsel for the executors that the petition must present a case of *actual necessity*, before the court can grant the order; that the order cannot be properly made where the party has, already at hand, means to supply comfortable suitable food and a sufficient shelter. The word "necessary," in the statute, is used in a relative sense. It means, with reference to the station in society, the former mode of life and surroundings, and the estate or income to which the applicant has been accustomed, and to which she will ultimately be entitled. In the case of Williamson *v.* Williamson (6 *Paige*, 298), the estate seems to have been much less than this, and yet the Chancellor considered a legacy of $2,000 a year to the widow a very scanty allowance, with reference to the amount of the estate.

The 83d section (above cited) is somewhat peculiar for its obscurity of meaning, if not for its impracticability when read literally. It declares that "if it appear to the surrogate that there is at least *one-third more of assets* in the hands of such executors or administrators than will be sufficient to pay *all debts, legacies and claims* against the estate," he may, in his discretion, allow a portion to be advanced. Now, in this case, and in most testamentary cases, the will disposes of the *whole* of the assets by way of legacies, whether specific, general or residuary. *All* are em-

braced by the language quoted above, and, if construed accordingly, then in no case of this character, could a legatee, however destitute or needy, obtain any relief under these provisions.    But statutes must must be so construed as to give them some effect. (Watervliet Turnpike Co. v. McKean, 6 *Hill,* 616). This can be done here by excluding residuary legacies, and perhaps this was intended by the statute.    To ascertain the excess of one-third, fixed sums, as legacies, only, I think, should be regarded.    The *residuum* is apt to be so fluctuating and uncertain in amount as to be, in any case, a very unreliable element in the calculation.    Adopting this view, it remains to be seen whether there is one-third more of assets than the amount of debts, legacies and other claims.    The inventory on file shows assets to the extent of $171,-436, to which may be added some $5,000 of accrued interest on securities, making about $176,436.    The legacies, exclusive of residuary, and known debts, will not exceed $118,000, to which, if we add one-third thereof, we have $157,334; deduct this from the amount of the inventory and accrued interest, and there results a surplus, over one-third of the debts and legacies, of more than $19,000.    Hence there is no difficulty, on this score, in granting the order asked for.

The provisions made in the will for the widow are expressed to be in lieu of dower, and her interest in the income of the $25,000 vested in her, at once, on the death of her husband (1st *Jarm. on Wills,* 646); and the interest on her share of the *residuum* commenced at the same time.    (Williamson v. Williamson,

above.) No other provision being made in the will for the support of the minor, Adelaide, than the income of certain sums, she is also entitled to interest on those sums from the death of the testator. (Cooke v. Meeker, 36 *N. Y.*, 15; King v. Talbot, 40 *N. Y.*, 76); and where, as in this case, the sums are left in trust, with directions that the income be applied to the use of legatees, it would seem that the directions are complied with, by paying it to them. (*Redf. on Wills*, 477.) These being vested legacies, whatever may have been earned by the fund producing them, up to the time of their respective deaths and not paid to them, will go to their legal representatives. A legacy, once vested, is not divested by the death of the legatee. (Larocque v. Clark, 1 *Redf.*, 469.)

The assets of the estate consisted of about $40,000 in cash, $114,000 in bonds and mortgages, $10,000 in government bonds, $1,000 in bank stock, and some other items. As the great bulk was invested and earning interest at the time of the testator's death, and so continues, and as the legacies to other parties do not begin to bear interest until a year after his death, it is quite apparent that any advancement that should be ordered made, even to the extent of the whole accrued interest, will in no wise affect those legatees.

The only obstacle in the way of making the desired order is, in ascertaining whether the advancements asked are necessary for the support of the petitioner and her ward. The petition does not indicate, as it should, what sums are desired. It does not state what the petitioner's income is from other sources, if any.

The answering affidavit is unsatisfactory, in merely alleging that she has a "considerable income," and in asserting substantially the same as to the minor. No figures are given on either side. The statements are too vague to enable this court to judge, intelligently, as to the propriety of granting the order prayed for. The petition should fully state all the facts necessary to bring the case within the provisions of the statute, and then be laid before the court, to enable it properly to discharge its duty. As the papers presented do not do this, evidence *aliunde* must be furnished, as was directed to be done in Gilman *v.* Gilman (66 *N. Y.*, 631; and see *Dayton's Surr.*, 442–3.)

The testator devised to his widow a house and land on Davenport's Neck, near New Rochelle, and, with a view to some future early letting of the premises for the season, the respective counsel have desired this court to determine now, whether certain mirrors in the house are fixtures, or assets. Although, perhaps, not the proper time to consider the question, I yield to the request, hoping thereby to prevent possible litigation on the subject.

I think the parlor and library mirrors are fixtures and pass to Mrs. Lockwood as the devisee. They are fastened at the top to the breast of the chimney by an iron clamp inserted into the masonry and extending outward, so as to clasp the top of the mirror frames and hold them there. They are supposed to be glued fast to or let into the mantel shelves, on which they rest, but the evidence is not very clear on the subject, and the frames are, with the mantels, of a like design

and of the same wood.    Both were made by a cabinet-maker and correspond throughout.    Judging from these facts, together with the draft submitted, it was evidently designed to make these mirrors as much a part of the house as the mantels themselves.    (McRea v. Central Nat. Bk., 66 *N. Y.*, 489; House v. House, 10 *Paige*, 158.)    As to the hall mirror it is different. That rests upon a bracket and seems in no way connected with the house, in any other manner than picture frames usually are.    It must be regarded as belonging to the assets.

Clearly, the appraisers in taking the inventory neglected their duty in not setting apart the exempt property and articles, as required by the statute.    The omission must be supplied.

After the announcement was made in regard to the requiring of further evidence as to the necessity of the advancement for the support of the widow and her ward, the parties again appeared and the petitioner produced oral evidence on the subject.    From this testimony it appears that she has an income of $165 net per month from certain real estate in the city of New York, or at the rate of about $2000 a year; that it formerly amounted to about four times that sum, and has diminished from last year about $3000; that she had rented the mansion at Davenport's Neck, furnished, for $1000 for the season; that in order to rent it so furnished she purchased of the executors one-half of the furniture therein, which half was bequeathed to the minor, for about $1000.    The house will require repairs to the extent of $75 before the tenant takes possession on or about the 1st of June next, and the

taxes on the property amount to about $275 per year, while, when not occupied, it costs her $40 per month to employ a man to take charge of the property, which is not so situated as to be conveniently and with comfort occupied during the winter months. The item for insurance is not given. It thus appears that, on the whole, no considerable amount can be realized from that property. So that, if we put the whole amount of her net annual income at present at $2500, we shall rather exceed the reality. For a lady who has been in the habit of commanding an income of her own to the amount of from $5000 to $8000 a year, to say nothing of the support rendered by a husband of such considerable wealth, and who naturally wishes to sustain herself in the station in which she was thus placed, moving in society which a considerable income usually attracts, her present income must be regarded as quite inadequate. Besides, her son by her former husband — a young gentleman, grown — is, so far as appears at present, dependent upon his mother. Under the circumstances, I think an order should be made directing the executors to advance to her the sum of $1500. I do not deem it prudent nor, indeed, within my power to direct the payment of a sum larger than that of her interest already accrued upon the amounts set apart by the will for her use. If she were to die to-morrow, the future earnings would not belong to her legal representatives, but to the legatees in remainder.

No evidence was offered by the executors as to whether the minor is in receipt of income from any other source. She is being educated at a very excellent institution and should be allowed a reasonable

22

sum. It is alleged that the executors have already advanced since the death of her father nearly $1000 for her benefit. A part of it, doubtless, accrued during her father's life, but to what extent does not appear. It is suggested that $2000 per annum should be directed to be applied to her support and education, but in this proceeding that would be improper, as this application under the statute has regard only to present needs. At the end of the year the interest will become due, and, whatever it may be, will, doubtless, through the proper channel, be applied to her support, as the law and sound judgment may require. Her interests under the will are precisely the same as her step-mother's. If the amounts of which she is entitled to the use yield interest at the rate of seven per cent., her income will be $3500 per annum. Having in view what has already been expended on her account, I think it safe to direct that the executors pay to the guardian of her person the sum of $1000 as necessary for her maintenance and education.

Before these payments shall be made, however, the bonds required by the statute must be given.

An order in accordance with these views will be entered.