### A. M. & J. J. HOUSE *vs.* HOUSE and others.

Where a tenant by the curtesy conveyed in fee, with warranty, lands belonging to his children, in which he only had a life estate, and then died intestate, leaving a widow and the children surviving him who were entitled to his personal estate ; *Held*, that the children, upon confirming the title of the purchaser, were entitled to be substituted as creditors of the estate of their father for the amount for which the personal representatives of the intestate were liable upon the covenant of warranty.

*Held also* that the amount for which the personal estate of the decedent was chargeable, upon the covenant of warranty, was only the amount of the consideration of the deed, and interest thereon from the termination of the life estate of the grantor in the premises ; and that the grantee was not entitled to recover interest upon the amount of such consideration during the continuance of the life estate, as he was entitled to the rents and profits of the premises until the death of the grantor.

The water-wheels, mill-stones, running-gear, and bolting apparatus, of a grist and flouring mill, and other fixtures of the same character, are constituent parts of the mill, and descend to the heirs at law as real property ; and do not pass to the executors or administrators of the deceased owner of the mill as a part of his personal estate.

The provision of the revised statutes making the mortgaged premises the primary fund for the payment of the debt secured by the mortgage, applies to

cases of absolute intestacy as well as to cases where the mortgagor has disposed of the whole or a part of his estate by will.

Where a widow is entitled to dower in the equity of redemption of mortgaged premises, she must keep down one third of the interest upon the amount unpaid upon the mortgage at her husband's death, until the amount which was thus unpaid is required to be paid off; and then she must contribute, towards such payment, a sum which will be equal to the then value of an annuity for the residue of her life upon the amount of principal and interest which was unpaid when her estate in dower commenced, by the death of her husband.

But where the husband mortgages property, after his wife has acquired an inchoate right of dower therein, and she does not join in such mortgage, the heirs at law or devisees of her deceased husband must pay off the whole of the incumbrance themselves.

THE bill in this cause was filed by two of the children of E. House deceased, against his widow and personal representatives and his other child, for an account and administration of his estate. The decedent in his lifetime had sold, and conveyed with warranty, a lot of land belonging to the complainants by descent from their deceased mother ; in land which the intestate had only a life estate as tenant by the curtesy. And the complainants by their bill claimed to be paid out of the personal estate of the decedent the amount for which the lot was sold, with interest thereon from the time of sale. The defendants, in their answer, consented that if the complainants would confirm the title to the purchaser they would pay them the amount of the original purchase money which was paid to the decedent, upon the sale of the lot, with interest thereon from his death ; under the direction of the court.

E. House died intestate, subsequent to the adoption of the revised statutes, possessed of a considerable real and personal estate, leaving a widow and three children surviving him. Certain portions of his real estate were incumbered by bonds and mortgages thereon, given by the intestate in his lifetime. And the complainants, in their bill, insisted that they were entitled to have these mortgage debts paid off out of the personal property of the decedent so as to relieve the real estate descended to them from the incumbrances ; or at least that the widow, who was entitled to dower in the premises, should contribute to

1843.

———

House
v.
House.

March 7.

1843.

House
v.
House.

the payment of these bonds and mortgages. A part of the real estate belonging to the decedent at the time of his death consisted of a grist mill and flouring mill. And the defendants claimed that all the machinery and apparatus which was necessary for manufacturing flour in such mill and which were not fixed into the wall so as to be essential for its support, were personal property and belonged to the administrators of the intestate, under the provisions of the revised statutes. Some other questions were raised by the complainant's bill, but which were amicably adjusted between the parties.

*S. Stevens,* for the complainants. The fixtures, machinery, apparatus, &c. annexed to the flouring mill by the intestate, belong to the heirs as incidents or accessaries to the realty. Fixtures of this nature, when annexed to the freehold by the owner, are deemed to have been made for the benefit of the inheritance, and descend with the freehold to the heir. This has long been the settled doctrine of the common law. (*Amos & Fer. on Fixt. ch.* 4, *p.* 132 to 143, *ed. of* 1830. *Miller* v. *Plumb,* 6 *Cowen's Rep.* 665. *Walker* v. *Sherman,* 20 *Wend.* 636.) The revised statutes have not made these fixtures assets in the hands of the administrators. (2 *R. S. old ed. p.* 82, § 6, *subd.* 4.) It was not intended by the section of the revised statutes in question to change the common law in relation to fixtures of this nature erected by the owner of the freehold, especially where the freehold cannot be enjoyed without them. (2 *R. S. old ed. p.* 82, § 6, *subd.* 4, *also* § 7, 8.) This section does not embrace such fixtures as between vendor and purchaser would pass to the purchaser. These fixtures would pass to the purchaser under a conveyance by the owner of the mill. Under a grant of a mill or the grant of land with a mill thereon, all the fixtures, machinery, &c. necessary for the use and enjoyment of the mill, pass as incidents to the freehold or principal subject of the grant, and that too although they may not be actually annexed to the freehold. (1 *Hill. Abr.* 16, § 90. 20 *Wend.*

366. *Le Roy* v. *Platt*, 4 *Paige*, 77. *Miller* v. *Plumb*, 6 *Cowen's Rep.* 665. *Farrar* v. *Stackpole*, 6 *Greenl. Rep.* 154.) As between the heir and administrator (there being no debts) the heir stands in the same situation as if he had purchased from the intestate in his lifetime, and he is entitled to all the rights of a purchaser. The administrators ought to have applied the assets in their hands to the payment of the bonds and mortgages. The bonds were a legal charge upon the personal estate of the intestate. (1 *R. S. old ed. p.* 749, § 4.) The statute requiring the heirs to whom any real estate descends subject to a mortgage, to discharge such mortgage, was not intended to apply to cases of intestacy, but only to cases where a man had disposed of his estate by will, (*see Revisers' Notes*, 2 *R. S.* 2d *ed. p.* 600,) because cases of intestacy are not within the reason or object of the statute. In cases of intestacy the real and personal estate descends to the same persons and is subject to the same application. The defendant Ann House, the widow of the intestate, is bound to contribute her just proportion to the payment of the mortgages.

*E. H. Kimball*, for the administrators and the widow. The machinery and apparatus annexed to the flouring mill are to be deemed assets, and go to the administrators under our statute. (2 *R. S. new ed. p.* 24, § 6, *subd.* 4.) The letter of the statute clearly places the fixtures in question in the hands of the administrators as assets. The principal part of the machinery and apparatus is not fixed into the walls of the mill house ; and they are fixtures for the purpose of manufacture. The revisers' notes explain the object of the statute. The object was to adopt the same rule between heir and executor as prevails between landlord and tenant. The bonds and mortgages upon the real estate must be paid by the heirs at law. (*See Revisers' Notes*, 3 *R. S. p.* 639, 2d *ed.*) The statute is certainly conclusive upon this point. (1 *R. S. p.* 740, *new ed.* § 4.) The widow is only liable, if at all, to keep down one-third of the interest during her life. (4 *Kent's Comm.* 46.)

*R. B. Kimball*, for E. S. House, the infant defendant, cited *Toller's Law of Ex'rs*, 146, 147; 5 *John. Ch. Rep.* 482.

THE CHANCELLOR. The arrangement proposed in the answer, in relation to the lot of the complainants which was conveyed by the decedent in his lifetime, appears to be proper and equitable, and is sanctioned by the court. The decedent could only convey his life estate in the lot, as tenant by the curtesy; and the complainants, if they had thought proper, could have immediately brought their suit against the purchaser for the recovery of the premises. The latter would then have had a remedy over against the personal representatives of the decedent, upon the covenant of warranty. But as the complainants would only have been entitled to recover the mesne profits of the premises subsequent to the death of their father, the amount of the purchase money and interest from that time, in addition to the costs of the litigation, would constitute the damages for which the estate of the decedent would be liable on the covenant. (*Staats* v. *The Executors of Ten Eyck*, 3 *Caines' Rep.* 111. *Bennett* v. *Jenkins*, 13 *John. Rep.* 50.) The complainants, upon confirming the title to the purchaser, are therefore equitably entitled to be substituted as creditors of the estate to that extent, but no further.

The claim to the mill stones, bolts, and other machinery in the flouring mill, by the administrators in this case, is founded upon the supposition that the revised statutes have established the rule that every thing annexed to a building which is used for the purposes of trade, or of manufacture of any kind, and which is not necessary to support the walls of the building, goes to the personal representatives, and not to the heirs of the owner, upon his death. The revised statutes, in attempting to define what are to be considered assets in the hands of executors and administrators, to be applied and distributed as personal estate of the decedent, contain, among other things, the following provision, as the fourth subdivision of the sixth section of the article

relative to the duties of executors and administrators in taking and returning inventories : " Things annexed to the freehold, or to any building, for the purpose of trade or manufacture, and not fixed into the wall of a house so as to be essential to its support." (2 *R. S.* 82.) Previous to the adoption of the revised statutes there was a distinction supposed to exist in relation to what was to be considered a part of the realty, as between landlord and tenant, and as between the heir at law and the personal representatives. It was also supposed that an outgoing tenant might be permitted to remove fixtures, of a particular description, placed by him upon the premises for a special purpose, which as between the heirs at law and the personal representatives of the owner of the freehold would have descended to the heirs. But the legislature, whether wisely or otherwise it is not for me to decide, in adopting the provision here referred to, probably intended to put the executor or administrator upon the same footing with a tenant as to the right to fixtures. Such at least was the recommendation of the revisers ; as appears from their note to the 6th section, in which this provision is found. (3 *R. S.* 639, 2*d ed.*)

It was impossible, however, to define, in a short sentence of three lines, what was to be considered a part of the freehold itself, and what were mere fixtures or things annexed to the freehold for the purposes of trade or manufacture. We must therefore still go back to the common law, and to the decisions of the courts, for the purpose of ascertaining what is a substantial part of the freehold, and what is a mere fixture or thing annexed to such freehold. We must also resort to the same sources of information to ascertain what is to be considered a part of a building, and what is in its nature mere personal property and only annexed to such building temporarily for the purpose of trade or manufacture. And I think, in this case, it may be safely assumed that it could not have been the intention of the legislature to authorize the personal representatives of the decedent, who owned this grist mill in fee at the time of

his death, to strip it of its water-wheels, mill-stones, bolting apparatus, and running-gear ; leaving to the heirs at law the mere sides or walls of the building, with its floors, partitions and roof. Such however, as I understand it, is the claim made by the defendants in this case. For it is not stated in the answer that there are any other fixtures in this grist mill and flouring mill, except machinery and other apparatus of that character and description. Fixtures of the character here claimed are not only convenient but essential to the proper enjoyment of the inheritance ; and are therefore as much a part of the freehold as the building and water power, which with them constitute the mill. The claim of the defendants to the fixtures must therefore be rejected.

The claim of the complainants to have the incumbrances upon the real estate, which were created by the testator himself, discharged by the application of his personal property for that purpose, cannot be sustained. It is true the revisers, in suggesting a reason why the former law should be changed, state one which does not necessarily apply to the case of an absolute intestacy. But the language of the section which they reported, and which the legislature adopted without alteration, clearly shows that they intended to make the new rule applicable to intestate estates, as well as to those cases in which the decedent has disposed of his property, or a part of it, by will. (*See* 1 *R. S.* 749, § 4.) The mortgages therefore must be paid off by those who are entitled to the real estate upon which they are a lien.

It does not appear from the pleadings in this case whether the widow of the decedent joined with her husband in these mortgages, or whether they were or were not given before her intermarriage with him. But it is stated in the bill, and admitted in the answer, that the two mortgages upon the grist mill were given to secure the payment of the purchase money. In relation to that portion of the property she takes her dower subject to the mortgages. She must therefore keep down one-third of the interest,

from the time of her husband's death, upon the amount of principal and interest then unpaid, until the mortgages are required to be paid off; and then she must contribute, towards such payment, a sum which will be equal to the then value of an annuity of the amount of one-third of the interest upon the sum unpaid at her husband's death for the residue of her life. (*See Bell* v. *The Mayor, &c. of New-York, ante p.* 49.) As to the other mortgage, if it was given previous to her marriage, or if she has joined with her husband in the mortgage, she must contribute to keep down the interest and pay off the mortgage in the same manner. For in such a case she is only entitled to dower in the equity of redemption, subject to the mortgage. (*Hawley* v. *Bradford*, 9 *Paige's Rep.* 200.) But if the mortgage was executed by the husband only, after his wife had become entitled to an inchoate right of dower in the premises, she must be endowed of one-third of the whole; and the heirs at law of the deceased husband must themselves pay off the whole of that mortgage and the accruing interest thereon.

A decree must be entered declaring the rights of the parties accordingly; and directing a reference to a master to take the account of the estate in the usual form. And the question of costs and all further questions and directions are reserved until the coming in and confirmation of the master's report.

The widow having remarried pending the suit, a suggestion to that effect is to be made in the decree; with a direction that the proceedings be hereafter carried on against her and her husband as defendants.