MOSELEY, executor, &c., of Bela D. Coe, deceased, *v.* MAR-
SHALL *et al.*

Devise of real estate, and "all the rents, issues and profits thereof," to the
testator's widow, for life, with remainder to the residuary legatees of his
personalty: the latter to be applied to the payment of debts, and such
debts as could not be paid thereby to remain a charge on the real estate,
" to be paid therefrom after the life estate of my wife therein," with direc-
tions to the executor to defer the payment of certain mortgages on the
real estate, during the lifetime of the widow, or to make loans for the pay-
ment thereof, secured by mortgage on said real estate, to be paid therefrom
after her decease : *Held,* that the mortgages were charged upon the estate
in remainder, in exoneration of the life estate.
There being no direction in respect to the payment of interest on the
mortgages during the life estate, the general intention of the testator, to
give the life tenant the rents and profits without deduction, requires the
interest to be paid at the expense of the residuary devisees; and the
executor is bound to keep it down, out of their estate.

APPEAL from a judgment of the Supreme Court, affirming,
with modifications, a sentence of the surrogate of Erie county,
rendered upon the final accounting of the appellant, as execu-
tor of Bela D. Coe, deceased. In the accounts of the appellant
produced to the surrogate, he claimed credit for the sum of
$2,576.30, which he had paid at several times for interest
on certain bonds and mortgages executed by the testator,
incumbering a property owned by him, situated in Buffalo,
called the Mansion House; and the question in dispute was,
whether this interest was properly payable by the appellant,
as executor, and allowable in his accounts.

By the testator's will, executed in March, 1852, he devised
to his wife his dwelling house in Buffalo in fee, subject to any
mortgage which might exist upon it at the time of his death;
and it was subject to a mortgage at the date of the will, which
remained unpaid at the testator's death. He also bequeathed
to her his furniture, horses, carriages, &c. And he likewise
devised to her the premises known as the Mansion House,

Moseley *v.* Marshall.

during the time of her natural life, "and all and several the rents, issues and profits thereof." The third clause of the will, upon which the question mainly depends, is as follows: "I will and direct that all the rest and residue of my personal estate of every kind, not hereinbefore disposed of, be applied to the payment of my debts and liabilities (excepting that which is secured by mortgage on my said dwelling house); and that the remainder of my said debts, over and above what can be paid thereby, be and remain a charge on my said Mansion House property, to be paid therefrom after the life estate of my said wife therein; and for that purpose I hereby empower my executors, hereinafter named, if practicable, to defer the payment of any existing mortgage or mortgages on said Mansion House property during the lifetime of my said wife, or to make a loan or loans for the payment of the same or any part thereof, and to secure said loan or loans by mortgage on said premises, to be paid therefrom after the decease of my said wife." The testator gave the residue of his estate, real and personal, to the respondents, Mrs. Marshall, E. B. Coe and Mrs. Leslie; the first named being a sister of his wife, and the other two his own nephew and niece. If either of them should die without issue then living, his or her share was given to "the trustees of the Theological Seminary of Auburn," and "the Buffalo Orphan Asylum." This Mansion House property was the only real estate which passed under the residuary clause. It yielded a net annual income of about $4,000. It was, when the will was made, and also at the testator's death, subject to three mortgages executed by the testator, amounting together to $12,000, for which the creditors also held his bonds. The testator died in November, 1852, and the appellant was the only executor who proved the will. He subsequently married the widow of the testator, and the latter died in April, 1855, being then in the 65th year of her age. It was shown that the annual expenses of the testator's household, immediately preceding the time of his death, was about $4,000. By the accounts produced before the surrogate by the appellant, and which, with the exception of these charges for payments on

account of interest, were allowed, it appeared that the personal property sufficed to pay the debts, except the mortgages, and to keep down the interest on those upon the Mansion House during the lifetime of the devisee for life; and there was left, at the time of her death, about $2,000, being the amount of a mortgage due to the testator's estate, which had not been collected.

The surrogate decided that the devisee for life was bound to pay the interest of the mortgages upon the Mansion House property out of the rents and profits, during the continuance of her estate, and, consequently, that the payments made by the executor for that purpose were misapplications of the moneys of the estate; and he required him to account for them with interest. The Supreme Court affirmed the principle of the decree of the surrogate, modifying it, however, by apportioning the first half year's interest, so that the part thereof which had accrued in the testator's lifetime, though not payable until after his death, should be chargeable upon the assets, and the remainder only chargeable upon the life estate, and in some other matters of detail. The executor claimed that the interest, as well as the principal of the mortgages, was chargeable upon the residuary estate given to the respondents by the will; and he brought this appeal to establish that position.

*Eben C. Sprague,* for the appellant.

*Henry W. Rogers,* for the respondent.

DENIO, J. It is a well established principle, that where there is an estate for life, and a remainder in fee, and there exists an incumbrance binding the whole estate in the land, and no special equities between the remainderman and the tenant for life can be shown, the latter is bound to pay the interest accruing during the continuance of his estate, and the owner of the future estate is to pay off the principal of the lien. (4 Kent's Com., 74; *House* v. *House,* 10 Paige, 158.) This rule would have defined the relative liabilities of these

Moseley *v.* Marshall.

parties respecting the mortgages in question, if the will had stopped with the creation of such estates as are devised by it, without making any provision respecting the mortgages. The section of the Revised Statutes which changed the rule formerly prevailing, by which the personalty was bound, for the benefit of the heir or devisee, to satisfy the debts which were a lien upon the land, would, in the absence of any provision to the contrary in the will, have exempted the personal estate in this case, and have constituted the land the primary debtor as between it and the representative of the personalty. (1 R. S., 749, § 4.) But both these rules are liable to be changed by the will of the owner of both classes of property; and the question upon this appeal is, whether such a change has been effected by the will under consideration. The testator has plainly enough declared that his personal estate (except the articles specifically bequeathed to his wife), shall not be exempted from the liability to pay the incumbrances, by expressly subjecting it, so far as it will extend, to the payment of all the debts except the mortgage on the dwelling house. The statute, therefore, has no application to the case. The scheme of the will is as follows: The widow is to have the dwelling house and to pay the incumbrances upon it, and she is also to have the furniture, horses, carriages, &c. As to these, we have at present no further concern. Then the respondents are to have the residue of the personal estate, if any remains, and an estate in remainder in the Mansion House, expectant upon the death of the widow; and the widow is to have an estate for life in the Mansion House. The mortgages are then to be provided for; and the first direction respecting them is, that they are to be paid out of the personalty if it shall be sufficient to pay them and the other debts. Pausing here, we may observe that the primary provision for their payment is out of a fund in which she takes no interest, direct or contingent, but which, if not thus appropriated, would have belonged wholly to the respondents. This shows that they were to be paid, if practicable, at the expense of the respondents, and not of the widow. Payment was to be made out of

a fund in which they were given the entire interest, subject to such payment, and in which she had none. This is a pretty strong indication that the burden was intended to be cast upon them, and not upon her. If it had happened that the personalty had been sufficient, the whole amount of the mortgages would have been paid, without recourse to the life estate, pursuant to the express directions of the testator; and the whole income of the Mansion House property would incontestibly have gone to the widow during her life.

But it may be said, there is an indication in the will of the testator's belief that the debts could not be fully paid out of the personal estate. This is true, and it is also apparent that he desired that whatever should be left unpaid should remain due upon these mortgages; probably because a debt thus secured could be more easily carried along, than one not so secured. But I think there is enough on the face of the will to show a probable intention that the balance left unpaid upon the mortgages, after exhausting the personal estate, should fall wholly upon the estate in remainder in the Mansion House, and not upon the life estate. In the first place the devise of the life estate is unqualified. He devises to her for life the Mansion House, and "all and several the rents, issues and profits thereof." If it had been intended that she should pay the interest on the incumbrances, or upon the balance remaining due on them after applying the personal estate, it is reasonable to suppose that the will would have so declared. The next preceding clause, namely, the one by which the dwelling house is given to her, shows that he, or the draftsman of the will, knew how to qualify a devise, by making it subject to an incumbrance. He gives the rents and profits by words importing the entirety, and which, to a common intent, exclude the idea of a deduction for any purpose. Then the principal of the debts is pointedly charged upon the estate in remainder; and interest is generally an incident of the debt. It is not, it is true, inseparably incident to the principal; for it would have been competent for the testator to provide that the interest should be paid out of one portion of his property, and the prin-

Moseley *v.* Marshall.

cipal out of another. But where there is no evidence of an intent to separate them, the person or property charged with the debt is also chargeable with the interest for the time during which it may be foreborne. The testator desired that the time of payment of the mortgages should be extended or a new loan be made for the purpose of continuing the debt. If this had not been practicable and his creditors had insisted on their money, the land must have been subjected to a sale to satisfy the liens. Suppose such to have been the case, and that a foreclosure suit had been instituted, when principal only was in arrear. I apprehend that the widow might have insisted that the estate in remainder should have been separately exposed, by undertaking herself to bid the amount of the debt for it. This would be according to the ordinary rule for marshaling liens; by which one having an incumbrance upon two subjects separable in their nature, as to one of which another person has an estate or lien, is compelled in the first place to have recourse to the parcel in which none but the party owing the debt is interested. But suppose the whole estate in the land were subjected to sale on a decree of foreclosure, and the money had been brought into court, and a surplus remained after paying off the mortgage, then inasmuch as the widow would appear to be the unqualified devisee of an estate for life, while the principal of the mortgaged debts was certainly chargeable primarily upon the remainder, it would seem plain that before any part of the surplus could be paid over to the respondents, the widow or her representative would be entitled to receive the full value of her life estate.

These illustrations tend to show that there was a general intent in the testator to charge the mortgages upon the estate in remainder, in exoneration of the life estate. This distinguishes the case from those in which the incumbrance burdens equally the life estate and the inheritance, as a mortgage given by husband and wife on the husband's land, or one given by the husband before marriage, or for the purchase price of the land. In this class of cases, the wife as doweress has no equity to shift the whole burden of the incumbrance upon the heir or

devisee, for the mortgage qualifies her estate equally with the inheritance. The courts, therefore, require a contribution from the owners of each estate, which they adjust upon principles of equity; charging the doweress with the interest upon one-third of the debt while it is forborne, and, in the case of a redemption, with such a proportion of it as would be equal to the value of a life annuity of the amount of the annual interest she was required to pay while the debt was continued. (*Bell* v. *The Mayor &c., of N. Y.*, 10 Paige, 49; *House* v. *House*, *supra*.) But if the mortgage was a charge upon the husband's estate alone, in consequence of having been executed after the right of dower attached, without her joining in it, she is entitled to dower in one-third of the whole land, and the heirs or other parties entitled to the inheritance must pay the whole of the mortgage, and all the interest thereon. This rule, it is true, could not be set up against the holder of these mortgages; but the several parties deriving title under the will of the owner of the land, are bound by the disposition which he has made, and by the modifications which he has annexed to their respective estates. If, by a fair construction of the will, he has charged the incumbrances upon the estate in remainder, in exoneration of the life estate, then as between those parties, having only the estates which they derive from him and subject to such equitable modifications as he has imposed upon them, the mortgages must be dealt with as though by their own force they burdened the land in the precise manner which the testator has indicated that it shall be burdened.

In deciding upon this construction of the will, as to the point in dispute, we must bear in mind that the devise to the widow is specific, and that to the respondent is general and residuary. In such cases it is an obvious rule of interpretation that the specific gift must be satisfied, if practicable. We know that the testator intended that to take effect according to its terms. The gift of the residue is in its nature contingent and uncertain, and we can only know that the testator designed that the devisees should take whatever remained; but we have no means of ascertaining what in value or extent he supposed that would

be. In the application of that principle we cannot fail to see, in this case, that there was a general intention to give to the widow the whole income of the Mansion House property for her life: the language, to that effect, is express and unqualified. Besides that, we find provisions for paying all the incumbrances without expense or prejudice to her. The testator devotes, in the first place, all the personal property to that purpose. As this, by the other arrangements of the will, would belong to the respondents and would not, by those arrangements in any event go to her, we see that he therefore intended that she should not be disturbed or her income abated, or she in any way prejudiced on account of the mortgages. Then he charges the residue of the mortgages, which the personalty should not be sufficient to pay, on the estate in remainder. This is another indication of an intention that she should not be prejudiced by them. But he says nothing respecting the interest. In the opinions of the Supreme Court it is suggested that he had no thought of it or reference to it. This is precisely my own conclusion. We find nothing in the will, I think, but a general intention to cast the burden of the debts, secured by the mortgages, upon the personalty and upon the future estate in the land—so that the widow should enjoy her life estate undiminished by these debts—and a power vested in the executor to do this by postponing the existing mortgages, or executing new ones, as the case might require. If the subject of the accruing interest had occurred to his mind, he might have provided for it in one or more of various ways. He might have directed the reservation of a portion of the personalty sufficient, according to the ordinary chances of life, to have kept it down during the continuance of her particular estate; or he might have provided for the purchase of a life annuity for that purpose. Much of the argument on the part of the respondents is based upon the incongruity of repeated borrowings to meet the semi-annual interest upon the mortgages, which, it is presumed, could scarcely have been contemplated; and I think the objection has considerable weight. But if we assume that the omission to provide for the interest was an

inadvertence, as I presume it was, the objection is less formidable. The power to make new loans had in primary contemplation the principal only of his debts. The interest was left unprovided for; but it, as well as the principal, was a lien upon the mortgaged premises. The testator has not, however, distinctly attached the burden of it to either of the estates which he created in the land, unless as an incident to the debt it is charged upon the same estate which is burdened with the principal. But there is a clear general intention that the devisee for life should have the rents and profits of the estate, that precludes the idea of a deduction for interest; and that disposition, as has been stated, must be satisfied though the devise of the residue should be curtailed. Before awarding to the residuary devisees their interests under the will, we must see that all those having specific gifts are satisfied; for the very idea of a residue is, what is left after satisfying all the other dispositions of the will. If we take the interest out of the rents and profits, we reduce the provision intended for the widow, but a similar effect is not produced as to the respondents by taking it out of the estate in remainder, for that being a residue is liable for all such deductions; and, therefore, no one is disappointed by failing to receive the provision certainly made to him by the testator.

I am of opinion, for these reasons, that the judgment of the Supreme Court and the sentence of the surrogate should be reversed, and that upon the proceedings being remitted by the Supreme Court to the surrogate, that officer should restate the appellant's accounts upon the principles of this opinion. The judgment, if not agreed on by the counsel for the parties, is to be settled by one of the judges of this court.

CLERKE, J., dissented; all the other judges concurring,

Judgment reversed, with special directions.