BURNET'S WIDOW

*v.*

BURNET'S EXECUTOR AND DEVISEES.

1. The right of a widow domiciled here to dower in lands in New York, is governed by the law of the latter State.

2. A dowress who joined in a mortgage given by her husband does not, as to the debt of her husband secured thereby, occupy the position of surety; nor is her position altered by a sale of the premises by her husband's executor, under a testamentary power of sale to pay debts, instead of a sale by the mortgagee, or his representative, under the mortgage.

3. Where a decedent's mortgage, in which his wife joined, is satisfied by a sale of the premises by his executor, ner right of dower therein is not enlarged as it is when such encumbrance is paid out of his personal assets.

On bill, answer and proofs.

This is a friendly suit by a widow against her husband's executor and devisees, the latter being her infant children. The subject of the controversy is the sum of $2,526.59, part of the proceeds of the sale by the executor of certain mortgaged real estate of the testator situate in New York. Its ownership depends upon the construction of the testator's will in connection with the widow's right of dower in the lands sold.

The facts are as follows: Henry R. Burnet, the testator, and husband of the complainant, lived and was domiciled at Madison, Morris county, New Jersey, and died there January 7th, 1888. He left little or no personal property but was seized of considerable real estate in both New Jersey and New York; that in New Jersey being worth about $40,000, and free from mortgage encumbrance; that in New York was worth $60,000 or more, and was encumbered by three mortgages, amounting in the aggregate to $11,000, one of which was given prior to his intermarriage with the complainant, and two afterwards, in which latter the complainant joined. He also owed about $14,000 of other

indebtedness, about half of which was in the form of a judgment confessed by him in this State shortly before he died.

His will, dated December 13th, 1887, four weeks before his death, omitting the formal parts, is as follows:

"*First.* It is my will, and I do order and direct, that all my just debts and funeral expenses and testamentary charges be duly paid and satisfied out of my personal estate by my executors hereinafter named and appointed as soon as conveniently can be after my decease.

"*Second.* In case my personal estate shall be insufficient to pay my just debts, funeral expenses and testamentary charges, I further order and direct, and hereby authorize and empower my executor to sell, either at public or private sale, and for such prices as he shall adjudge expedient, such parts of my lands and real estate situate, lying and being in that part of the city of New York called Morrisania, as may be necessary for that purpose, and to make, execute and deliver good and sufficient deeds of conveyance to the purchasers thereof; and the proceeds of such sale or sales to appropriate and use to and for the payment of said debts, expenses and charges.

"*Third.* All the rest, residue and remainder of my estate, real, personal and mixed, and wheresoever the same may be situated, which I shall die seized of, possessed of or entitled to, I give, devise and bequeath to my son, James Edgar Burnet, and my daughter, Mabel Howard Burnet, equally, share and share alike, to have and to hold the same to the said James Edgar Burnet and Mabel Howard Burnet, their heirs, executors, administrators and assigns forever.

"*Fourth.* I nominate and appoint my brother, Benjamin W. Burnet, of Madison, New Jersey, sole executor of this my last will and testament."

The executor, finding the personalty insufficient to pay the debts, or any considerable part of them, took measures, as directed by the will, to sell a competent portion of the real estate therein mentioned for that purpose. To that end he applied to the complainant to unite in the sale and release her dower to so much of the lands as he should find it necessary to sell in order to pay the debts. This she declined to do unless her right of dower therein was secured to her, and claimed dower in the whole lands, without any abatement on account of the existing mortgages. The executor admitted her right of dower in the equity of redemption and in whatever surplus the lands should produce over and above the mortgages, but denied that it extended any further. Thereupon the parties entered into an agreement which fixes the value of the widow's dower at a sum in gross equal to twenty-one and

sixty-four hundredths per cent. of the proceeds of sale, provides for her joining in the conveyance and for payment to her out of that percentage, of the excess of the sale over the amount of the mortgages, and for a deposit in the Howard Savings Institution of Newark of that percentage on the amount of the mortgages, to await the event of a suit to determine her right in it.

The sales then proceeded (the widow joining in tne conveyances) until they amounted to $29,000, twenty-one and sixty-four hundredths per cent. of which amounted to $6,158.19. Of this sum $3,631 were paid to the widow, and $2,526.59, representing twenty-one and sixty-four hundredths per cent. of $11.672.33, the amount of principal and interest due on the mortgages, were deposited in the Howard Savings Institution to await the event of this suit.

The widow then filed her bill, claiming the fund in question.

At the hearing, proof of the law in the State of New York was made by offering in evidence the Revised Statutes of that State of 1827 and 1828, as found in Banks, 5th ed. of 1859, and the decisions of the court were proved by offering in evidence a large number of the reports of decided cases found in the regularly published reports of that State.

*Mr. Mills*, for the complainant.

*Mr. Forsyth*, for the defendants.

PITNEY, V. C. .

Counsel for the complainant rested her right to the fund in question mainly on two grounds:

*First*. He contended that the wife, in joining with her husband in releasing her inchoate right of dower to secure his debt, assumed and occupied the position of a surety for him, and acquired all the rights of a surety, and, among them, the right to have the debts so secured paid out of any assets which the husband may leave, including land; and that the payment of such debts should and did exonerate the lands mortgaged from the lien of the mortgages, so far as her dower is concerned, and,

as a result, that there being sufficient assets, whether of personalty or realty, to pay the debts secured by mortgage, as well as all others, and leave a sum sufficient to satisfy her right of dower in the whole premises, she is entitled to have dower admeasured as if there were no mortgage, or as if the mortgages had never been executed by her.

*Second.* He contended that the lands having been sold by the express direction of the testator for the purpose of raising money to pay all his debts, including those secured by mortgages, the latter must be considered and treated as paid and discharged to all intents and purposes the same as if they had been so paid and discharged by the testator in his lifetime, or, after his death, by his executor out of personal property left by him. In this connection he contended that the complainant was entitled to dower in the lands mortgaged against all the world except the mortgagee or his assignee, and it was only when the lands were sold under foreclosure of the mortgage that the widow was confined to dower in the surplus; and, further, that, in this case, by the true construction of the will, the proceeds of the sale of these lands must be considered as converted into personalty, and, as a result, that the mortgages must be considered as having, in.effect, been paid out of the personal estate left by decedent.

He further contended that the will must. be construed and applied to the circumstances according to the law of the domicile, and not according to that of the State of New York.

With regard to the last point, I am of opinion that, so far as complainant's equity depends upon her right of dower, it must be regulated and determined by the statutes and decisions thereon of the State of New York. *Whart. Confl. L.* § *273; Story Confl. L.* § *448; Nelson* v. *Bridport, 8 Beav. 547, 10 Jur. 1043.*

I deem this point of little consequence, since I think it will appear that, so far as this case is concerned, there is very·little, if any, difference in the state of the law in the two States.

By the common-law rule prevailing both in England and in this country at the beginning of this century, a widow was not endowable of an equity of redemption. If she once joined her husband in the statutory method in a conveyance of his lands by

way of mortgage her dower in those lands was forever gone, unless the mortgage debt was not only paid and discharged, but the title revested in her husband in his lifetime. *4 Kent Com. 43, 44.*

But the courts of New York, and generally in this country, early in this century determined that the widow was dowable in an equity of redemption.

In *Waters* v. *Stewart, 1 Cai. Cas. 47,* decided in 1804, it was first held in New York that an equity of redemption was a legal estate and subject to levy and sale by an execution at law. And Chancellor Kent, following the direction of that case, in *Titus* v. *Neilson, 5 Johns. Cas. (1821),* gave the widow her dower in the equity of redemption. And see *Hitchcock* v. *Harington, 6 Johns. 290.*

But the course of the decisions in New York, as well as in this State, without an exception so far as I have been able to find, limit the right to the equity of redemption, and give the widow her dower, subject to such mortgages as were upon the property when her husband acquired title or when she married him, or in the execution of which she joined with him and which remained unpaid at his death. The extent of her dower seems to have been determined and her rights fixed by the situation at his death. The courts of equity, however, extended to the widow the right accorded to the heir to have the mortgage encumbrance paid out of the personal assets so far as they were sufficient for that purpose, and to that extent relieved her dower right of the burden of the mortgage. This was as far as the strict and hard rule of the common law was ever relaxed in New York or in New Jersey.

Some apparent contradiction on this point has been found in the decided cases, and some confusion and inaccuracy in their treatment by the commentators has arisen from a failure to distinguish between actions at law and in equity. In the former, the widow has in some cases failed because a mortgage (for much less, it may be, than the value of the premises) executed by her or by the husband before marriage has been held by the owner of the fee as a muniment of title, where she would have suc-

-ceeded in equity in obtaining dower subject to the mortgage. So, -on the other hand, owners of the fee have been defeated at law in actions of dower, and their lands subjected to full dower by reason of an erroneous or accidental discharge of the mortgage, -or a failure to have it properly assigned, when they would have been protected in a court of equity.

The doctrine of merger, as applied to the union of the owner-ship of the fee with the ownership of the mortgage, has also, in several instances, been misapplied to cases of this kind, and has given rise to actual inconsistencies in the results. Numerous instances of cases illustrating these real and apparent conflicts of authority are given by Mr. Scribner in his treatise. But, with these exceptions, the rule has always been as above stated. ·

The subject was brought under statutory regulation in the State of New York at or prior to the year 1827 by the Revised Statutes of that date. The edition used at the hearing was 5th Banks 1859, and the sections referred to are as follows, sections 1, 4, 5, 6, of the Dower act, Vol. III. p. 31:

"Sec. 1. A widow shall be endowed of the third part of all the lands, whereof her husband was seized of an estate of inheritance, at any time during the marriage.

"Sec. 4. Where a person seized of an estate of inheritance in lands shall have executed a mortgage of such estate, before marriage, his widow shall nevertheless be entitled to dower out of the lands mortgaged, as against every person except the mortgagee, and those claiming under him.

"Sec. 5. Where a husband has purchased lands during coverture, and shall at the same time mortgage his estate in such lands to secure the payment of the purchase-money, his widow shall not be entitled to dower out of such lands, as against the mortgagee or those claiming under him, although she shall not have united in such mortgage, but she shall be entitled to her dower as against all other persons.

"Sec. 6. Where, in such case, the mortgagee, or those claiming under him, after the death of the husband of such widow, cause the land mortgaged to be sold, either under a power of sale contained in the mortgage or by virtue of the decree of a court of equity, and any surplus shall remain, after payment of the moneys due on such mortgage and the costs and charges of the sale, such widow shall nevertheless be entitled to the interest or income of the one-third part of such surplus for her life, as her dower."

With regard to the first point taken by the complainant, namely, that the dowress who has joined in a mortgage occupies

the position of a surety and is entitled to all the rights of one, I find the case of *Hawley* v. *Bradford, 9 Paige 200,* decided long after the Revised Statutes went into effect, directly in point against complainant. There a mortgage in which the widow had joined was foreclosed and went to a decree after the death of her husband. At the sale the property brought enough to pay the mortgage and a surplus sufficient to satisfy the widow's dower in the whole proceeds of sale, the settled practice in New York being to allow her a sum in gross based on her prospect of life. Upon a reference to dispose of this surplus, according to the New York practice, several judgment creditors and the widow appeared and claimed it. The report states:

"Upon the reference, the widow claimed the right to be endowed of one-third of the proceeds of the mortgaged premises, provided the whole value of her dower, upon the principle of life annuities, did not exceed the amount of the surplus moneys raised upon the sale, on the ground *that her joining in the mortgage must be considered as a mere security for her husband's debt.* The master decided that she was only entitled to dower in the surplus after paying the complainant's debt and costs. And that the gross value of her dower in such surplus, upon the principle of life annuities, is $75.43, subject to a deduction therefrom of a proportionate part of the costs of the reference," &c.

On exception by the widow Chancellor Walworth said: " It is settled law that where the wife pledges her separate estate, or the reversionary interest in her real property, for the debt of her husband, she is entitled to the ordinary rights and privileges of a surety. *Clan. H. & W. 589; Neimcewicz* v. *Gahu, 3 Paige 614; S. C., 11 Wend. 312.* If the same principle is to be applied to the case of the wife joining in a mortgage of the real estate of the husband, for the purpose of barring her contingent right of dower therein, the claim of the exceptant in this case must be sustained. For the equitable claim of the surety to have the mortgage satisfied out of that estate or interest in the premises which belongs to the principal debtor alone, is entitled to a preference over the claims of the subsequent encumbrancers to have their debts satisfied out of the estate or interest in the premises. I am not aware of any decision, however, in which the principle of suretyship has been applied to a case like the

present. And the two cases before my learned predecessor, Chancellor Kent, were disposed of under the supposition that the wife who had joined the husband in a mortgage of his estate was not entitled to have such mortgage satisfied out of the husband's interest in the premises exclusively, so as to give her the full benefit of her dower in the whole premises, and not in the equity of redemption merely. *Tabele* v. *Tabele et al., 1 Johns. Ch. 45; Titus* v. *Neilson, 5 Johns. Ch. 452.* Strictly speaking, the wife has no estate or interest in the lands of her husband during his life, which is capable of being mortgaged or pledged for the payment of his debt. Her joining in the mortgage, therefore, merely operates by way of release or extinguishment of her future claim to dower as against the mortgagee, if she survives her husband, but without impairing her contingent right of dower in the equity of redemption.

" The master was, therefore, right in supposing that Mrs. Bradford was not entitled to be endowed of the whole proceeds of the mortgaged premises, but only of the surplus which remained after paying the mortgage debt and the costs of foreclosure."

This case appears to be the settled law in New York, and has been followed in all subsequent cases.

Of this and other like cases where the question has arisen, counsel for the complainant contended and argued that they do not apply to cases where there is a sale without foreclosure, for the reason that the widow may claim against all persons except the mortgagee, and in foreclosure cases she is brought in conflict with him. But in *Hawley* v. *Bradford* the claim was made against judgment creditors, and not against the mortgagee. The latter had received his money and was out of court. And, in fact, this is necessarily the situation in all conflicts over surplus moneys. The mortgage debt must have first been paid out of the property.

In *House* v. *House, 10 Paige 158*, there was no foreclosure; the controversy was between the heirs at law and the administrator and widow of an intestate. The bill was filed by two of the heirs for a settlement of the estate, and prayed that the per-

sonal property might be appropriated to pay certain mortgages upon the real estate, and that the widow should contribute her share towards those encumbrances, in which she had joined. Here, if ever, an opportunity was offered to assert and enforce her equity to have the mortgages discharged out of the decedent's property in exoneration of her dower interest, if it ever existed. But the chancellor not only held, under the section of the Revision applicable to the case, that the heirs had no right to have the personalty so applied to their relief, but he also held, following *Hawley* v. *Bradford,* that the widow had no such equity; and he decreed her to pay and keep down one-third of the interest on the mortgages. The section of the Revision applicable is Vol. I. p. 749 § 4 original edition (Vol. III. p. 38 Banks' 5th ed.), and is in these words:

"Whenever any real estate, subject to a mortgage executed by an ancestor or testator, shall descend to an heir or pass to a devisee, such heir or devisee shall satisfy and discharge such mortgage out of his own property, without resorting to the executor or administrator of his ancestor, unless there be an express direction in the will of such testator that such mortgage be otherwise paid."

The doctrine so asserted and enforced in *House* v. *House* was reiterated, and that case expressly approved by the court of appeals in *Moseley* v. *Marshall, 22 N. Y. 200, 202,* and followed in *Leavenworth* v. *Cooney, 48 Barb. 570,* hereafter to be fully stated.

The result in *House* v. *House* was in strict accordance with the rule laid down by Chancellor Kent in the earlier and leading case of *Swaine* v. *Perine, 5 J. C.* (a case between the heir and widow) *491,* as follows: "Her right of dower was subject to the mortgage; and if the heir had been obliged to redeem the land, by paying that mortgage, to which *the plaintiff was a party,* she ought, in justice and equity, to contribute her ratable proportion of the moneys paid towards redeeming the mortgage. The redemption was for her benefit so far as respected her dower. To allow her the dower in the land without contribution, would be to give her the same right that she would have been entitled to if there had been no mortgage, or as if she had not duly

joined in it. It would be to give her dower in the whole absolute interest and estate in the land, when she was entitled to dower only in a part of that interest and estate."

In *Evertson* v. *Tappen, 5 J. C. 497*, closely following *Swaine* v. *Perine*, the widow was also executor with power of sale, but there was a large amount of real estate acquired by the testator after the date of the will which was not, as the law then stood, affected by it. A legislative act was procured authorizing her to make sale of this real estate. Such sale was made of one piece purchased the year before the testator's death. It was subject to a mortgage for consideration money for the whole value, and the mortgage was paid out of the proceeds of the sale. There was personal and other property sufficient to pay this mortgage, and the widow claimed her dower in the whole proceeds. But Chancellor Kent, in an accounting between the heirs at law and beneficiaries under the will and the widow, disallowed it (*see pp. 511, 512*), placing his decision on general principles of justice and equity.

It may be that the distinction taken by Chancellor Walworth in *Hawley* v. *Bradford*, is untenable, and that his reasoning in that connection is unsound and his result illogical. It may be that it would have been more logical to have held that the widow, in joining her husband in the conveyance by way of mortgage of his real estate in order to bar her inchoate right of dower, occupied the position of a surety, precisely as if she had joined in a mortgage of her own separate estate. But the question is not what the rule might or ought to have been, but what it actually is. And I find it to be as above stated.

The principle of these cases was adopted in this State in *Hinchman* v. *Stiles, 1 Stock. 454*, which is very much like *Hawley* v. *Bradford*.

I cannot find in any of the cases any distinction taken, nor do I think any exists in principle, so far as regards the widow's rights, between the case of a sale made under foreclosure resulting in a surplus and one made by an executor or administrator in executing the will or settling the estate of the decedent.

As before remarked, the relative rights of the widow and heir

or devisee seem to be fixed at the death of her husband, and, if so, cannot be disturbed by anything that takes place subsequent thereto. And on this subject I think all will agree that it ought not to be in the power of an executor or administrator to so manage matters as to advance the interests of the widow at the expense of the heir or devisee, or the contrary. The rights of neither party should be at the mercy of that officer. For instance, in this case, if there had been no will, it ought not to be in the power of an administrator to choose whether the widow shall have full dower in all the real estate left by the decedent or only dower subject to the mortgages on the New York property, and then execute his choice by selling lands in New Jersey subject to her dower to pay debts secured by mortgage on the New York property, and so give her full dower; or, on the other hand, to permit those mortgages to be foreclosed, and so confine her dower to the surplus, if so be she have the equity therein claimed by her counsel. I think the courts both of this State and that of New York would interfere to protect both parties from any such results from such management.

Complainant's counsel agreed inferentially that the executor or administrator has no such power, and argued with much earnestness that it would be the duty of the administrator, in the case put, to sell the New Jersey land subject to the dower for the purpose of paying the New York mortgage debts, and thereby free that land from their lien, and correspondingly enlarge the widow's dower. In fact, the scope of his whole argument necessarily included this position. I am unable to agree with him in this contention, being unable to find anything to warrant it in any utterances of the law by the courts of either State. In my judgment, if the orphans court should order the sale of lands not subject to dower to pay debts secured by mortgage on other lands, the payment of such debts in that manner would not increase the widow's dower therein, but the heirs would have an equity to have it confined to the limits which existed at the testator's death.

So, too, with regard to any action on the part of the mortgage creditor. I do not think it is within his power, in a case like

the one last supposed, to, so to speak, play into the hands of the widow by refraining from foreclosing his mortgage, and coming into New Jersey and compelling the administrator to sell lands to pay him, and thereby increase the value of the widow's dower in the New York land; and if he had done so, I think the heir would, nevertheless, have successfully resisted any attempt of the widow to take advantage of it.

This is the direct result of the doctrine that if either the heir or widow pays off the mortgage encumbrance which binds her, he or she can call upon the other to contribute. Payment by the administrator out of the proceeds of the sale of land is, in effect, a payment by the heir, and an equity results to him to have the widow contribute. *1 Scrib. Dow. 519 et seq.; 2 Scrib. Dow. 696; Swaine v. Perine, 5 J. C. 482, 491.*

The only case cited by counsel of complainant which at all supports his position is *Kling v. Ballentine, 40 Ohio 391,* which, it must be confessed, does so fully. There the testator died seized of real estate, mortgaged by himself and wife to secure his debt of about $3,000, which was nearly or quite its full value. He also left personal property which exceeded in value his unsecured indebtedness by about $2,000, so that application of that surplus to the mortgage debt would have reduced it to about $1,000, and, under the rule prevailing in this State, would have advanced the widow's dower interest by just that amount, and no more. The probate court ordered the land to be sold to pay the debts, including the mortgage debt, and gave the widow dower in the surplus which the mortgaged real estate brought over and above the mortgage debt, amounting to about $50. The court of common pleas, on appeal from the probate court, gave the widow her dower in the whole proceeds of the sale, and the supreme court, on final appeal, as reported, affirmed the common pleas, citing in their opinion and refusing to follow *Hawley v. Bradford.*

It seems to me that each of the Ohio courts in that case overlooked the true limits of the widow's rights, which, by the rule in this State, would be the amount of the mortgage indebtedness when reduced by applying all the surplus personalty. But, be

that as it may, *Kling* v. *Ballentine* is clearly not law either in New York or New Jersey, and cannot affect the result in this case.

I come now to the second branch of complainant's argument, namely, that the lands having been sold by express direction of the testator to provide a fund to pay these mortgage debts, and they having been so paid, must now be considered as discharged to all intents and purposes as if paid by the testator in person or by his personal representative after his death out of personal assets, into which the land must for this purpose be considered to be converted.

My understanding of the effect of the doctrine of conversion, as applied to land sold by testamentary power to pay debts, is, that it makes it equitable assets as distinguished from legal assets; that is, it lets in all creditors to share *pro rata*, without regard to the character of the indebtedness; an effect at one time of great consequence in England and also in this country before the distinction between specialties and simple contract debts was abolished. *Leigh & D. Conv. 3 et seq.*

Beyond that I do not find that the doctrine goes.

In this case the testator must be assumed to have been acquainted with the laws of New York and the extent of his wife's dower right in his lands there. He is presumed to have known that her right was limited by the value of the equity of redemption. Looking through the will, I do not find the least glimpse of any intention to increase her right in the slightest degree. Her name is not mentioned in it, and her present existence could not be inferred from anything it contains. If he had intended to enlarge her estate, it is to be presumed he would have so stated in express terms. The object and purpose of the will is manifest. He had three classes of debts. One class was entirely unsecured; one debt was secured by a judgment, and the others were secured by mortgages on the lands in question. The lands mortgaged were unproductive. His children were minors. Unless a will with power of sale to an executor was made, some of his lands must be sold by judicial proceedings, with all the expense and disadvantages attending such sales. The object of

his will was, then, manifestly, to enable his executor to do just what the law would do, but in a much cheaper and more advantageous way. The executor could and did cut up the lands into lots to suit the market, and presumably got a much better price by that method of disposing of it.

By the statute of New York encumbered land sold to pay debts by order of the court is sold subject to encumbrances. *Rev. Stat. 5 Bank's ed. Vol. III. p. 192 § 36.* And the doctrine of exoneration of real estate out of personal assets seems to be entirely abolished there by statute. *Rev. Stat. 5 Bank's ed. Vol. III. p. 38 § 4,* above cited.

The executor might have executed the will by selling the land expressly subject to the mortgage encumbrances, and compelling the purchaser to assume those in discharge of the estate, and take assignments of the mortgages as muniments of title and defences against the widow's dower. Such a sale would have effectually paid the debts, and, so far, executed the will; and if he had done so, the question now before the court would not have arisen. The widow's dower would have been confined to an equity of redemption. But, in my judgment, that is, in effect, just what he has done, and I am clear that it must be so construed as against the infant heirs at law. The latter are not parties to the agreement between the widow and executor, and cannot be affected by it. As before remarked, the executor cannot, by adopting any particular mode of executing the will, add to or abstract from the rights of either widow or heir; they must remain as they stood at the testator's death. The mortgages were, in effect, paid by the proceeds of the sale of the very land they covered, and in such case, in my judgment, an equity exists in favor of the heir against the widow to have her dower confined to the surplus, unless the execution of the will necessarily results in enlarging her estate. I do not think it does. I think the current of authority in New York and New Jersey is the other way.

*Thompson* v. *Boyd, 1 Zab. 58, 2 Zab. 543,* was, in effect, a case like this. The executors there sold land to pay what was treated as a debt of the testator, secured by a mortgage on the

land sold, and took a release from the purchaser, who was as-
signee of the debt, but permitted him to hold the mortgage as a
muniment of title; and it was held that the widow's dower was
confined to the surplus. *Hartshorne* v. *Hartshorne, 1 Gr. Ch.
349,* is in the same direction; and so are the cases above cited
of *House* v. *House* and *Evertson* v. *Tappen.*

No case was cited from the reports of either New York or
New Jersey where a claim like that made by the complainant in
this case was ever allowed.

On the contrary, counsel for defendant cited and relied upon
the case of *Leavenworth* v. *Cooney, 48 Barb. 570,* which is so
much in point that I will give it at length. The testator in that
case left real estate worth over $50,000 subject to mortgages of
$10,300, in which his wife had joined, given to secure his own
bond, and by his will directed his executors to sell the same and
pay his debts and the encumbrances on his real estate. Out of
the proceeds he gave his widow a legacy in lieu of dower, which
she declined, and elected to take her dower.

Morgan, J., speaking for three out of the four judges of the
supreme court, proceeds as follows: "The question presented is,
whether, under the provisions of the will, the widow of Patrick
Cooney, having elected to take her dower in the real estate of the
testator, instead of the legacy bequeathed to her in lieu of dower,
takes the same free from the encumbrances of the several mort-
gages executed by her husband in his lifetime, and in which she
joined; or whether she must bear her share in the burden of
paying them off.

"The will devises all the real and personal estate of the testa-
tor to his executors, in trust, substantially as follows: *First.* To
sell the same whenever they deem proper and a fair price can be
obtained. *Secondly.* Out of the proceeds, after paying debts and
expenses of execution of the will, *and after paying all encum-
brances on such real estate,* the executors are directed to invest
the sum of $5,000 and pay over the interest thereof semi-annu-
ally to his widow and two children, Daniel and Ellen Cooney,
share and share alike. And upon the death of the widow the
principal to be paid over to the two children, share and share

alike. The foregoing provision for the widow and children was declared to be made and intended in lieu of dower, then the testator directed the $5,000 to be paid to the residuary legatee, Nary McKeever, to whom the residue was bequeathed.

" It is claimed by the defendant's [widow's] counsel that the executors are required by the will to sell subject to the dower of the widow, she having demanded it, and also to pay off the encumbrances.

" It is evident that the sale contemplated by the testator included the dower interest of his widow in the real estate ; but by reason of the election of the widow to take dower instead of the legacy, the executors cannot carry out his intention in that respect.

" It seems, however, to be conceded that the executors have the right to sell the real estate, subject to the dower right of the widow, in which event they are required to pay the debts, including the encumbrances on the real estate. Having therefore made a provision to create a fund to pay off the encumbrances, it is claimed by the defendant's counsel that the widow is entitled to have the same applied in exoneration of what otherwise would be a charge upon her dower interest. But it is clear that the executors, without any such directions, might be called upon by the owners of the mortgages to discharge the mortgage debts, provided they held the bond or other personal obligation of the testator for their payment. It does not affirmatively appear by the statement of facts in this case, that the testator gave his bond for the debts included in the mortgages. If this fact is material it should appear in the case.

" (This was a fact, and the state of the case was amended so as to show it.) It may well be supposed that the testator did not fully understand the effect of the provision he was making in case his wife should decline to accept it in lieu of dower. But if he had given his bond for the payment of his mortgage debts, as I apprehend was the fact, then it is clear that his executors were liable to the owners of the mortgages, without any directions to pay them. *And upon payment, the executors could call upon the widow for contribution, unless it appears to have been*

*the intention of the testator to relieve her dower estate from the charge.*

"Although, as a general rule, the land is the primary fund for the payment of the mortgage debt, as between the widow claiming dower therein and the executors, still I am of the opinion that *a simple direction of the testator to his executors to pay the mortgage debt out of the avails of his estate, does not imply that it is to be paid in exoneration of the heirs at law, or of the widow claiming dower in the mortgaged premises.* If, however, the testator is not personally liable for the debt, a different result might ensue. For why should the testator direct his executors to pay off a mortgage debt out of his estate, when he was not personally liable to the mortgagee, unless he intended it as a gift to the heirs at law, or to the widow claiming dower in the mortgaged premises? Without doubt, the defendant in this case is liable to pay off her proportion of the encumbrances when the will has made provision for its payment out of the avails of the sale of his estate, so as to exonerate her dower interest from contribution. There is nothing in the language of the will which manifests any such intention on the part of the testator, unless it is implied in the directions given to his executor to pay off encumbrances. At law she can only claim dower in the equity of redemption, but the testator may by bequest enlarge her estate. His intention to do so should, however, be plainly deducible from the language of the will, before we come to the conclusion that such was his intention.

"My own conclusion is, that if the testator was personally liable for the payment of the mortgage debts, his direction to his executors to pay them out of his estate cannot be construed into a gift of so much thereof as was properly chargeable upon the widow in respect to her dower in the mortgaged premises."

That case was severely criticised by counsel for the complainant, but his industry was unable to find that it had ever been overruled, doubted or criticised, and I must assume it to be the law at this time in the State of New York. It seems to me to govern this case.

Counsel, in his elaborate and interesting brief, has quoted

from the opinions of judges and the text of commentators to the effect that when the mortgage is paid off by the mortgagor or by his personal representative out of his estate, it is forever discharged and the widow's right of dower is thereby enlarged. I have examined all his references where those expressions are found, and in each one of them the context shows that, in order to have the effect of enlarging the widow's dower, such payment must be made out of the *personal* assets of the decedent. And, in that connection, see *2 Washb. Real Prop. 565, 566.*

I will advise a decree declaring the fund in question to belong to the two devisees in equal shares. But, inasmuch as the widow has acted in good faith, and her conduct in entering into the agreement with the executor to join in the conveyances was an undoubted advantage to the estate, I will advise that her costs and a counsel fee of $150 be paid out of the fund.